C. Lawrence RAMON, Respondent Below, Appellant,

v.

Justine L. RAMON, Petitioner Below, Appellee.

Nos. 524, 598, 2007.

Supreme Court of Delaware.

Submitted: Oct. 22, 2007.
Decided: Dec. 23, 2008.

Kathryn J. Laffey, Kelleher & Laffey, Wilmington, DE, for appellant.

Jeanne M. Hanson, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

STEELE, Chief Justice:

This matter involves consolidated appeals from the Family Court. Respondent–Appellant, C. Lawrence Ramon ("Husband") appeals the Family Court's award in favor of Petitioner–Appellee Justine L. Ramon ("Wife") regarding the division of certain corporate assets ancillary to their divorce proceeding. Husband raises three arguments on appeal. First, he contends that the issue of retained earnings was improperly raised in the Family Court. Second, he argues that the Family Court improperly applied 13 *Del. C.* § 1513 as the assets are not marital property and the Family Court did not have jurisdiction to distribute the nonparty corporate assets. We find no merit to Husband's first two arguments. Alternatively, he argues, and we agree, that the Family Court, on remand, improperly calculated the retained earnings subject to the marital property division.

Wife appeals the Family Court's order dismissing her Motion for Reargument concerning the division of certain real property in Lewes, Delaware. Wife contends that the Family Court erred in its calculation of the marital value of the real property and should have corrected its error pursuant to Family Court Rule of Civil Procedure 60(a). We find no merit to this claim.

Accordingly, we affirm in part, reverse in part, and remand with instructions to reduce Wife's share of the retained earnings.

## FACT AND PROCEDURAL BACKGROUND

Husband and Wife married on December 10, 1987. Husband had been previously married and divorced, with three adult children. He owned two businesses during his first marriage, which he retained following the first divorce: Brookstone Pension Consultants and Harkins Agency. It is undisputed that both Brookstone and Harkins were not marital property. Husband acquired an initial 50% interest in Brookstone in 1969 and Harkins in 1974, but acquired the entire interest in both businesses as part of his first divorce settlement.

Harkins was a broker dealer, involved in investments of securities, stocks, and bonds. Brookstone was a pension consulting firm that performed administration and accounting for independent pension plans for employers. Both entities were incorporated. The two assets in dispute in this appeal are Brookstone's stock account and Harkins's brokerage account. Both accounts were separate assets of the respective corporations (Brookstone Pension Consultants and Harkins Agency) and accounted for their income and assets on their corporate tax returns. Both accounts were transferred from one bank or brokerage company to another before and during the marriage; the name and legal ownership on both accounts, however, remained the same throughout the marriage.

Husband also owned beach property in Lewes, Delaware, which he and his first wife acquired in 1978. He obtained the entire interest as part of the first divorce settlement. The parties primarily lived in Newark during their marriage and vacationed at the Lewes property. In 1994, the parties consolidated and paid off the outstanding mortgage on the Lewes property, which had a stated value of $275,000. The Lewes property remained solely in Husband's name, until Wife filed her first Petition for Divorce in March 2005. After she dismissed that petition, Husband conveyed the Lewes property into their joint names in May 2005. At that time, the property was valued at $862,500.

In January 2000, Husband and Wife separated, as that term is defined by 13 *Del.*

*C.* § 1503(7).[1]  They continued to reside together and maintained joint finances until their divorce in January 2006, following Wife's second Petition for Divorce which was filed in August 2005.  The Family Court held a pretrial conference on January 16, 2007 and a final ancillary hearing on May 11, 2007.  In its Ancillary Opinion and Order issued July 17, 2007, the Court concluded that the parties were in relatively equal financial circumstances and divided most of the marital estate equally.  The Court equally divided the equity in most of the marital estate;  except that the Court divided the Lewes property and the business accounts 60/40 in favor of Husband.  It found that the divorce value of the Harkins account was $288,865 (after subtracting an outstanding credit line of $50,000) and that the divorce value of the Brookstone account was $4,000.

Husband filed a Motion for Reargument on July 27, 2007 and on August 1, Wife filed her response in which she addressed "retained earnings" for the first time.  Because Wife did not address retained earnings at the initial hearing, and Husband, therefore, had no opportunity to present evidence on that issue.  The Court issued a Final Order on August 31, 2007, adjusting Husband's share of the Lewes property to 65% and upholding its previous decision to split the business accounts 60/40, based on its finding that the accounts represented retained marital earnings.

On September 10, 2007, Wife filed a Motion for Reargument regarding the August 31, 2007 Order granting Husband an additional 5% interest in the Lewes property.  Husband moved to dismiss the Motion for Reargument on September 19, 2007.  The Court granted Husband's Motion to Dismiss, concluding that the Family Court Civil Rules of Procedure did not permit a reargument of a reargument and, alternatively, that the Court had not erred.

The parties filed separate appeals to this Court, which we consolidated on February 27, 2008.  After hearing oral argument on May 14, 2008, we remanded the matter to the Family Court with directions to hold a hearing in accordance with our decision in *J.D.P. v. F.J.H.*[2]  The Family Court held a supplemental hearing on July 21, 2008.  On August 11, 2008, the Court issued its order, finding that a portion of the Harkins account represented retained earnings ($177,425), as did all of the Brookstone account ($4,000).  This appeal followed.

## DISCUSSION

### I.  Husband's Appeal

On appeal from a Family Court decision dividing marital property, we review the facts and the law, as well as the inferences and deductions made by the trial judge.[3]  We review conclusions of law *de novo.*[4]  If the Family Court judge ap-

---

1.  According to Section 1503(7):

> "Separation" means living separate and apart for 6 or more months immediately preceding the ruling upon the petition for a decree of divorce, except that no period of separation is required with respect to a marriage characterized under § 1505(b)(2) of this title;  and separation may commence and/or continue while the parties reside under the same roof, provided, during such period, the parties occupy separate bedrooms and do not have sexual relations

> with each other, except as § 1505(e) of this title may apply.
> 13 *Del. C.* § 1503(7).

2.  399 A.2d 207 (Del.1979).

3.  *E.g., Forrester v. Forrester,* 953 A.2d 175, 179 (Del.2008);  *Wife J.F.V. v. Husband O.W.V., Jr.,* 402 A.2d 1202, 1204 (Del.1979).

4.  *E.g., Forrester,* 953 A.2d at 179;  *Mundy v. Devon,* 906 A.2d 750, 752 (Del.2006);  *In re Heller,* 669 A.2d 25, 29 (Del.1995).

plied the law correctly, we review the decision for an abuse of discretion.[5] We will not disturb findings of fact unless they are clearly wrong and justice requires that those facts be overturned.[6]

### Marital Property and Section 1513(b)

Husband contends that the Family Court erred by treating the Brookstone Account and the Harkins Account as marital property. He argues that, because both corporate investment accounts are assets of businesses he established and owned well before marrying Wife, 13 Del. C. § 1513(b) expressly excludes those accounts from marital property.[7] He claims that the statute excludes any premarital businesses as well as any increase in the value of those businesses.

In *Horning v. Horning*,[8] we examined the effects of Section 1513(b) on premarital businesses assets. We affirmed the Family Court's holding that the replacement equipment that the husband had obtained during the marriage in his premarital landscaping business's name, along with increases in the business's client accounts and gross income, were not marital property under Section 1513.[9] We explained:

Husband's business as it existed during the marriage was merely a continuation of his premarital business.... In fact, husband maintained the business as an asset separate from the marriage. As for wife's claim regarding the increased number of client accounts and the expanded gross income, these items merely reflect an increase in the business's value, and are thus exempt from distribution under 13 Del. C. § 1513(b)[4].[10]

We also noted that "[t]his application of Section 1513(b)[ ] is in keeping with the Court's broad equitable powers and does justice to the parties." [11]

In this case, Husband incorporated and fully owned both Brookstone Pension and Harkins Agency before his marriage to Wife. The Harkins Account and the Brookstone Account are assets of two separate corporations. Therefore, 13 Del. C. § 1513(4), at first glance, would appear to exclude these assets from the marital property.

### Retained Earnings

■ Wife contended, and the Family Court agreed, that the corporate accounts represent more than a mere increase in the businesses' value protected by Section 1513; rather, Wife argued that the accounts represent retained marital earnings

---

5. *E.g., Forrester*, 953 A.2d at 179; *Jones v. Lang*, 591 A.2d 185, 186 (Del.1991); *W. v. W.*, 339 A.2d 726, 727 (Del.1975). The Family Court has "broad discretion" in the division of marital property. *Gately v. Gately*, 832 A.2d 1251 (Del.2003).

6. *E.g., Forrester*, 953 A.2d at 179; *Montgomery Cellular Holding Co. v. Dobler*, 880 A.2d 206, 219 (Del.2005); *Solis v. Tea*, 468 A.2d 1276, 1279 (Del.1983).

7. 13 Del. C. § 1513(b). Section 1513 states, in relevant part:

(b) For purposes of this chapter only, "marital property" means all property acquired by either party *subsequent to the marriage* except:

(1) Property acquired by an individual spouse by bequest, devise or descent or gift ...;
(2) Property acquired in exchange for property acquired prior to the marriage;
(3) Property excluded by valid agreement of the parties; and
(4) The increase in value of property acquire prior to the marriage.
*Id.* (emphasis added).

8. 1985 WL 14043 (Del.1985).

9. *Id.* at * 1.

10. *Id.*

11. *Id.*

properly includable in the marital estate. Husband contends that because Wife presented the issue of retained earnings only after the hearing in her response to Husband's Motion for Reargument, she waived this argument. In the alternative, Husband argues, and Wife concedes, that the Family Court made a clerical error when calculating the marital value of the Harkins account.

■ We conclude that Husband's argument that the Family Court improperly considered Wife's retained earnings argument is without merit. Although Wife did not raise the issue of retained earnings until after the hearing, the status of the corporate accounts was properly before the Family Court at the ancillary hearing. Under Family Court Civil Rule 52(e), which applies to ancillary actions, the Court *may* take certain action, including precluding the claim or defense, if one of the parties fails to submit the proposed findings and conclusions required by Rule 52(d).[12] Since the issue of retained earnings was before the Court at the ancillary hearing, it was within the Family Court's discretion to consider that issue on reargument.

Retained earnings are "corporate net income which would be available for distribution as dividends, for payment of wages, salaries and bonuses, and other proper corporate purposes."[13] They are active earnings generated and retained during the marriage that *add to* the value of a premarital asset, in contrast to the passive *increase in* the value of premarital earnings which is protected by Section 1513(b)(4). "In one sense, earnings generated and retained after the marriage are not an increase in the value of property acquired prior to the marriage by definition, post marriage earnings add to rather than 'increase [in] the value of' earnings accumulated prior to marriage."[14]

In *J.D.P. v. F.J.H.*, we found that retained earnings of a corporation may be included in the marital estate.[15] We explained that if one spouse controls the corporation, that spouse "would have the power to determine whether earnings are to be retained and thus insulated from all legal and equitable claims of the other spouse."[16] We concluded that "[c]ertainly a statute which commands a Court to 'equitably divide'... property between spouses is not intended to give that sort of unilateral control to one of them."[17] We then offered the following guidance in applying this construction of Section 1513(b):

[T]he Court must keep in mind that the public policy, mandated in the Act, is to "equitably divide" marital property. That will include a consideration of the values which are at stake, whether the increase in retained earnings resulted from a natural enhancement over which the controlling spouse had little or no control, whether such increase resulted from ordinary and necessary business reasons, whether such increase resulted from an intentional purpose by the controlling spouse to prevent earnings from becoming marital property, the impact of any order on other stockholders, on the corporation and on others with an interest in it; the ... tax consequences of any order on each spouse and the

12. FAM. CT. CIV. R. 52(d), (e).

13. *J.D.P. v. F.J.H.*, 399 A.2d 207, 210 n. 1 (Del.1979).

14. *Id.*

15. *Id.* at 211.

16. *Id.* at 210.

17. *Id.*

corporation.[18]

We also stated that "[t]he power to control the disposition of corporate earnings, that is, to distribute or retain them, is the *critical factor* in [that] case and distinguishes it from one in which the value of property owned prior to marriage is enhanced by circumstances not subject to control by the spouse."[19]

In our May 16, 2008 Order in this case, we agreed with Husband's argument that he did not have sufficient opportunity to present evidence regarding retained earnings and, therefore, could not be faulted for failing to meet his burden of proof. We remanded the case to the Family Court to allow Husband that opportunity.

On remand, the Family Court found that the funds in the corporate accounts represented retained earnings. Husband presented evidence, in the form of Harkins's 2005 tax return and testimony by his daughter, a former Harkins bookkeeper and operations and control manager, that a portion of the funds were premarital assets. According to the tax return, the year end balance of "unappropriated retained earnings" was $271,425 as of December 31, 2005.[20] Daughter previously testified at the May 11, 2007 ancillary hearing that there was an outstanding line of credit of $50,000 at the time of the divorce, which should be subtracted from the year end balance. Thus, the Court found the value of the Harkins account to be $221,245.[21]

Daughter also testified that all records before the date of marriage were destroyed in 2004 when the company changed locations but that at least $94,000 of the Harkins account represented premarital retained earnings. Treasury stock returned to the business in 1980 when Husband bought his former partner's interest in the business accounted for $44,000, and a federally required net capital reserve balance accounted for the remaining $50,000. Although Husband provided no documentation to support Daughter's testimony, the Court agreed to exclude $94,000 from the equitable distribution.

Regarding the Brookstone account, Husband presented no new information at the supplemental hearing. The Court, therefore, found the entire $4,000 remaining in the account were retained earnings, and also represented the increase in retained earnings during the parties' marriage.

The Family Court then considered whether to include the balance of the retained earnings in the marital estate. Although the Court noted that it must consider several factors, it appeared only to consider that Husband "did not provide the court with any evidence to indicate that he did not have the power to control the disposition of the $177,425 [sic]." The Court reached a similar limited conclusion regarding the Brookstone account. In any event, because Husband had the burden of proof, and (as described above) the power to control the disposition of the funds, which is the "critical factor" in the analysis,[22] the Family Court neither abused its discretion nor committed plain error by including a portion of the Harkins account

---

**18.** *Id.* at 211.

**19.** *Id.* at 210–11 (emphasis added).

**20.** The parties divorced in January 2006. The Family Court found, and Wife did not contest, that it was appropriate to rely on the company's tax documents.

**21.** Husband claims, and Wife concedes, that despite this finding, the Family Court failed to make this subtraction in its final calculation of the amount owed to Wife.

**22.** *See J.D.P. v. F.J.H.*, 399 A.2d at 210.

and all of the Brookstone account in the marital estate.

### The Clerical Error

■ Alternatively, Husband argues that the Family Court made a clerical error in reaching its final calculation of $177,425 in retained earnings in the Harkins account. Because Husband did not raise the matter as a Rule 60(a) motion before the Family Court, absent plain error, we will not review the claim.[23]

In calculating the amount owed to Wife from the Harkins account, the Family Court started with the 2005 year end balance of $271,425 and determined it was appropriate to deduct a $50,000 credit line and $94,000 in premarital retained earnings. This should yield a total of $127,425; yet, the Court valued the account at $177,425. In reaching its final tally, it appears the Court failed to subtract the $50,000 credit line. Using this higher total, the Court calculated Wife's 40% portion of the Harkins account at $70,970 instead of $50,970.[24] The Court's miscalculation was plain error. Accordingly, we reverse that determination in part with instructions to reduce Wife's share of the Harkins account to $50,970.

### Jurisdiction over Nonparty Corporate Assets.

■ Lastly, Husband contends that the Family Court lacked jurisdiction over the

Harkins Account and Brookstone Account because they are assets of nonparty corporations. Husband argues, correctly, "that the Family Court may only assert jurisdiction over the parties to its proceedings, *i.e.*, the Husband and Wife,"[25] and does not obtain "jurisdiction over a nonparty corporation's assets merely because a party to the divorce proceeding happened to own stock in the corporation."[26]

Husband's argument, however, is unpersuasive because the case at bar did not require the Family Court to obtain jurisdiction over a third party. Section 1513(a) gives the Family Court the jurisdiction to grant ancillary relief and to equitably divide the marital property of the parties to a divorce.[27] Having found that Husband controls the retained earnings of the nonparty corporations and that, therefore, these earnings were part of the marital property, the Family Court did not need to have jurisdiction over the corporations to distribute the retained earnings.[28]

## II. Wife's Appeal

Wife contends that the Family Court erred by refusing to allow her to reargue the Court's August 31, 2007 disposition, which addressed Husband's first Motion for Reargument of the Court's ancillary order. Wife asserts that she is entitled to

---

23. Supr. Ct. R. 8; *see also Cassidy v. Cassidy*, 689 A.2d 1182, 1184 (Del.1997).

24. Adding Wife's share of the Brookstone account, Husband owes Wife $52,570 not $72,570.

25. *In re B & F Towing & Salvage Co.*, 1988 WL 81406, at *2 (Del.1988) (citing *Eberly v. Eberly*, 489 A.2d 433, 445 (Del.1985)).

26. *O'Brien v. O'Brien*, No. 1307–84, at 2 (Del. Fam.Ct. Oct. 30, 1984).

27. *See* 13 *Del. C.* 1513(a).

28. *See Disabatino v. Liddicoat*, 1990 WL 168292, at *4 (Del.1990). In *Disabatino*, we found that the "Family Court, as a matter of law, possessed subject matter jurisdiction under 13 *Del. C.* § 1513 to value husband's and wife's stock and marital interests in ... closely held business entities, notwithstanding the court's lack of *in personam* or subject matter jurisdiction over third parties also having interests therein." *Id.* (citing *Walter W.B. v. Elizabeth P.B.*, 462 A.2d 414 (Del.1983); *Eberly*, 489 A.2d 433, 445–46 (Del.1985)).

file for reargument because she did so as a direct result of the new Order issued on August 31, 2007 and because Husband, not Wife, filed the first motion for reargument. In the alternative, Wife asserts that we should treat her motion as a Motion to Correct the Court's Error. Our standard of review is the same as in Husband's appeal.

Under Family Court Civil Procedure Rule 59(e), a party may file a motion for reargument within 10 days after the filing of the Court's opinion or decision, which may be opposed by an answer filed within 10 days of the motion.[29] The Court then determines from the motion and answer whether to grant reargument.[30] "A motion for reargument is the proper device for seeking reconsideration by the Trial Court of its findings of fact, conclusion of law, or judgment.... The manifest purpose of all Rule 59 motions is to afford the Trial Court an opportunity to correct errors prior to appeal...."[31] Reargument will usually be denied unless the Court overlooked a controlling precedent or legal principles, or unless the Court misapprehended the law or facts in a manner that affected the outcome of the decision.[32] A motion for reargument is not intended to rehash the arguments already decided by the Court.[33]

Rule 59(e) makes no provision regarding the propriety of further reargu-

ment; serial motions for reargument, however, are not permitted.[34] Although the matter is within the discretion of the trial Court, generally, where one party files a Motion for Reargument and the opposing party files an answer, the opposing party may not file its own Motion for Reargument.[35]

In this case, Wife responded to Husband's First Motion for Reargument and, in her Second Motion for Reargument does not allege that the Family Court overlooked any controlling precedent or legal principles and does not indicate that the Court misapprehended the law or facts in any way different than as set forth in her Answer to the first motion. Rather, Wife's Second Motion for Reargument appears to be merely an attempt to rehash the arguments already decided by the Court in its July 17, 2007 and August 31, 2007 Orders. The Family Court appropriately dismissed Wife's motion.

Wife also contends that the Family Court erroneously awarded Husband 65% of the equity of the Lewes property. She argues that the Court has the power to correct this error pursuant to Family Court Civil Procedure Rule 60(a). Rule 60(a) allows the Court to correct "[c]lerical mistakes and mathematical errors in judgments, orders, or other parts of the record

**29.** FAM. CT. CIV. R. 59(e)

**30.** FAM. CT. CIV. R. 59(e)

**31.** *Hessler, Inc. v. Farrell,* 260 A.2d 701, 702 (Del.1969).

**32.** *See, e.g., Salah & Pecci Leasing Co. v. GBC Christiana Landing, LLC,* 2008 WL 4382799, at *1 (Del.Super.); *Beatty v. Smedley,* 2003 WL 23353491, at *2 (Del.Super.); *Wilmington Trust Co. v. Nix,* 2002 WL 356371, at *3 (Del.Super.).

**33.** *See, e.g., Salah & Pecci,* 2008 WL 4382799, at *1; *Wilmington Trust Co.,* 2002 WL 356371, at *3

**34.** *See, e.g., Ryland Group, Inc. v. Santos Carpentry Co.,* 2004 WL 2827707, at *1 (Del.Super.); *Playtex v. Columbia,* 1991 WL 191619 (Del.Super.).

**35.** *See, e.g., Ryland Group,* 2004 WL 2827707, at *1; *George & Lynch, Inc. v. Armco Steel Corp.,* 1987 WL 8888, at *1 (Del.Super.).

and errors therein arising from oversight or omission." [36] Wife alleges the Family Court erred by considering property values submitted to the Court by Husband for the first time in his July 27, 2007 motion for Reargument. These errors are neither clerical nor mathematical and are, therefore, not properly the subject of a Rule 60(a) motion.

36. FAM. CT. CIV. R. 60(a).

### CONCLUSION

Based on the foregoing, we AFFIRM in part, REVERSE in part, and REMAND with instructions to reduce Wife's share of the Harkins account to $50,970.