# STATE OF MICHIGAN

# COURT OF APPEALS

LIA RAIN JENSEN,

       Plaintiff-Appellant/Cross-Appellee,

v

TODD CALVIN JENSEN,

       Defendant-Appellee/Cross-
       Appellant.

UNPUBLISHED
January 9, 2018

No. 333569
Kent Circuit Court
LC No. 15-004813-DO

Before: MARKEY, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this appeal from a judgment of divorce, plaintiff, Lia Rain Jensen, appeals by right the trial court's division of the marital estate after a bench trial. Defendant, Todd Calvin Jensen, similarly challenges the trial court's division of the marital estate on cross-appeal. For the reasons more fully explained below, we affirm the trial court's judgment.

## I. BASIC FACTS

Plaintiff and defendant were both previously married and divorced. They first met through an online dating service in 2010 but did not date long; however, they resumed dating in January 2012 and married in February 2013. The marriage had difficulties from the very start, and plaintiff filed for divorce in May 2015. Plaintiff and defendant did not have children together. The primary issues for trial involved whether and to what extent to include various assets in the marital estate.

The evidence showed that plaintiff came to the marriage with a net worth of between $5,000 and $10,000, even though she owned a rental home. She previously worked in real estate but quit her job during the marriage and, with defendant's help, purchased a Valpak franchise. The evidence showed that the Valpak franchise had just begun to generate a profit by the time parties separated.

Defendant had significant premarital assets. He owned Arista Truck Systems, Inc., which was in the business of customizing commercial trucks, and the commercial property that Arista leased. While the parties were still dating, defendant also purchased the home on Rosewood that the parties resided in throughout the marriage. At trial, the parties disputed the amount that

Arista's value increased during the marriage and whether the Rosewood home had increased in value.

The trial court held a bench trial on the disputed issues over two days. The parties each called an expert to testify about Arista's value; Richard Adamy testified on plaintiff's behalf, and Eric Larson testified for defendant. Both experts valued Arista using the income approach, and both estimated Arista's value to a prospective buyer by calculating its EBITDA margin—the earnings before interest, tax, depreciation, and amortization.

The experts came to a similar value for Arista at the start of the marriage. Adamy opined that Arista was worth $2.29 million on December 31, 2012, and Larson testified that it was worth $2.46 million at the start of the marriage. The experts, however, disagreed about Arista's value at the time of the parties' separation. Adamy came to a final value of $4.33 million on June 30, 2015, which represented a $2,040,000 increase in value. Larson, on the other hand, applied different figures and opined that Arista only increased in value by $400,000 over the course of the marriage.

The trial court found that "the evaluation of the business done by Mr. Larson [was] persuasive" and found that Arista's value increased by $400,000 during the term of the marriage. The court found that plaintiff's Valpak franchise was worth $78,000 because that was the number both parties selected, and it was the amount remaining on the loan used to finance the purchase. The trial court also found that the home on Rosewood had not increased in value during the term of the marriage. The trial court determined that the commercial property—the site where Arista conducted its business—and plaintiff's rental home had an increase in value, but that the amounts canceled each other out. It stated that defendant would keep his commercial property, and plaintiff would keep her rental property. The trial court also divided the parties' retirement accounts. It found that the total value of the marital estate was $598,613. Although it recognized that a marital estate will normally be divided 50/50, it elected to award 60% to defendant and 40% to plaintiff. It explained that the marriage was short, and the parties did not have children. Additionally, defendant "funded 95% or more of the marriage." It specifically stated that there was "no evidence that Ms. Jensen provided assistance to defendant's business or really provided much assistance to the marriage." The court calculated plaintiff's share of the estate to be $239,446, but reduced that amount by the value of the Valpak business, which was $78,000. The remaining award was $161,446. It indicated that defendant would have to pay that amount to plaintiff.

The trial court entered a judgment consistent with its oral findings and determinations in June 2016. Plaintiff then appealed in this Court, and defendant cross-appealed.

## II. EVIDENTIARY ISSUES

## A. STANDARD OF REVIEW

Plaintiff first argues that the trial court erred when it allowed defendant to admit Larson's report into evidence over her hearsay objection. She also argues that Larson should not have been able to offer an opinion using evidence that was not admitted into evidence and to offer an opinion that relied on assumptions that were contradicted by the record evidence. This Court

reviews a trial court's decision to admit evidence for an abuse of discretion. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes, which necessarily occurs when the court premises its decision on an error of law. *Id.*

## B. LARSON'S REPORT

Because defendant offered Larson's report into evidence to prove the truth of the matters asserted in it, it was hearsay. See MRE 801(c). Hearsay is inadmissible unless one of the exceptions stated under MRE 803 or MRE 804 apply. See MRE 802. Because Larson drafted the report in preparation for this litigation, it was not admissible under one of the exceptions. See *Solomen v Shuell*, 435 Mich 104, 139 (opinion by ARCHER, J.), 143 (opinion by BOYLE, J.); 457 NW2d 669 (1990); *Attorney General v John A Biewer Co, Inc*, 140 Mich App 1, 17; 363 NW2d 712 (1985). So, the trial court abused its discretion when it admitted his report.

Although the trial court abused its discretion admitting Larson's report, that error will not warrant relief unless refusal to take action is inconsistent with substantial justice. MCR 2.613(A); see also MRE 103(a). An error is harmless under MCR 2.613(A) unless it caused such unfair prejudice to the complaining party that allowing the verdict to stand would be inconsistent with substantial justice. *Johnson v Corbet*, 423 Mich 304, 327; 377 NW2d 713 (1985).

At trial, Larson and Adamy agreed on the method for calculating Arista's value. They disagreed about the dates to use as the starting and ending points to best capture the value; they disagreed about the figure that should be used for the 2015 revenue, and they disagreed about the percentage to be applied as the EBITDA margin. Larson and Adamy each explained to the trial court why he felt that his application of the formula gave a better assessment of Arista's actual value as a going concern at the beginning and end of the marriage. Larson also testified that he spoke with defendant and reviewed some of Arista's internal financials. Adamy, however, indicated that he did not interview defendant. Finally, Larson testified that he felt that the business had increased by $400,000 during the marriage, and Adamy testified that he felt that the business increased by more than $2 million in the same time period. The trial court found that Larson's conservative estimation of Arista's value was more credible. Specifically, it found that his estimation was "more detailed" and "involved seeing the site, interviewing the owner of the business, [and] understanding the business in more detail."

The testimony by both experts showed that Adamy used figures that increased the estimation of Arista's value, and Larson used figures that decreased the estimation of Arista's value. The disputed valuation was largely a matter of the weight and credibility of the experts, and the trial court was free to accept either expert's testimony or to find some middle ground. See *Pelton v Pelton*, 167 Mich App 22, 25-26; 421 NW2d 560 (1988). The testimony and financial records that the parties admitted at trial were sufficient to allow the trial court to make its finding that Arista had the lesser of the two proposed values. This Court will presume that the trial court sitting as the finder of fact did not improperly use the report. See *People v Wofford*, 196 Mich App 275, 282; 492 NW2d 747 (1992). Moreover, because the report was cumulative to Larson's testimony at trial, it is unlikely that it prejudiced plaintiff. See *Sackett v Atyeo*, 217 Mich App 676, 685; 552 NW2d 536 (1996).

In her reply brief, plaintiff argues that the report was not cumulative to Larson's oral testimony because the report relied on financial records that were not in evidence. However, Larson testified that he relied on those records and discussed the reasons for doing so. Plaintiff's trial lawyer also cross-examined him about the difference in valuation that was attributable to his use of the financial records for that period, as opposed to using the financial records for the two quarters ending in June 2015. Thus, the report was cumulative to his oral testimony.

The trial court's erroneous decision to allow the admission of the report was harmless. MCR 2.613(A).

## C. ADMISSION OF LARSON'S TESTIMONY

Plaintiff objected at trial that there was a lack of foundation for the statements in Larson's report because the financial statements for April 2013 and April 2015 had not been produced and were not in the record, which implicated MRE 703. After objecting to the admission of the report on the ground that the financials were not in evidence and relating the objection to Larson's report, plaintiff's lawyer complained that he was trying to cross-examine the witness about documents that he had never seen. He then clarified that his own expert had founded his opinion on financial records that were in evidence. The trial court noted the renewed objection but stated that it had already ruled that the exhibit was in evidence. Plaintiff did not move to strike Larson's testimony or otherwise object to his opinion on the ground that it was not supported by record evidence. Therefore, she has not preserved her claim that Larson's testimony was improper because he founded it on facts that were not in evidence as required under MRE 703. Contrary to plaintiff's contention in her reply brief, an objection to the admission of Larson's report on foundational grounds does not amount to an objection to his oral testimony on foundational grounds. See *Marietta v Cliff's Ridge, Inc*, 385 Mich 364, 374; 189 NW2d 208 (1971) (stating that the party asserting a claim of error must have specified the same ground for objection before the trial court or the claim cannot be asserted on appeal). It is also evident that plaintiff did not object that Larson's testimony was inadmissible under MRE 702. Therefore, these claims of error are unpreserved. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

Contrary to defendant's argument on appeal, the failure to preserve these claims of error does not mean that this Court must review them for plain error. This Court reviews unpreserved claims in a criminal case or a case involving the termination of parental rights for plain error because those cases involve fundamental liberties. See *Napier v Jacobs*, 429 Mich 222, 233; 414 NW2d 862 (1987); *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). By contrast, in an ordinary civil case, this Court has the discretion to review unpreserved claims of error, but it is under no obligation to do so. *Walters*, 481 Mich at 387. This Court may review an unpreserved claim of error when the failure to do so would result in manifest injustice, when consideration is necessary to a proper determination of the case, or when the issue is a question of law and the facts necessary for resolution of the issue have been fully presented. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). Even when one of those criteria is present, our Supreme Court has cautioned that appellate courts should exercise their discretion sparingly and only when exceptional circumstances exist that warrant review. *Napier*, 429 Mich at 233.

Had plaintiff raised her objections before the trial court, defendant's lawyer might have been able to elicit testimony that demonstrated that Larson's opinion was adequately supported by the facts or data in evidence, that he used reliable principles and methods, and that he reliably applied the principles and methods. MRE 702. Additionally, to the extent that Larson's opinion depended on some additional facts or data, with a timely objection on the specific ground, defendant could have sought to admit copies of the financial documents. Indeed, it appears that Larson had the financials available and offered to produce them at trial, and defendant's counsel suggested that they had already been supplied in discovery. Thus, had plaintiff insisted on their admission, it appears that defendant could have admitted them at some later point, which would have satisfied MRE 703 (providing that the factual bases for the opinion may be admitted after the expert testifies); see also MRE 705 (noting that an expert does not have to disclose the underlying facts or data before he or she may offer an opinion). Finally, had the trial court insisted that he offer his opinion on the basis of record evidence, Larson could have modified his opinion using the financial records already in evidence, which included the months at issue. 2 Robinson & Longhofer, Michigan Court Rules Practice: Evidence, § 705.2, p 730 (stating that a trial court may allow an expert to modify his or her opinion to reflect the facts or data in evidence). And it is doubtful that his opinion would have materially changed as a result of using one-third of the quarterly figures in evidence, as opposed to using the (unadmitted) figures for the actual month at issue. On this record, it does not appear that the failure to review these claims would result in manifest injustice, that the consideration is necessary to a proper determination of the case, or that the facts necessary for resolution of the issue have been fully presented. *Smith*, 269 Mich App at 427. Consequently, we decline to exercise our discretion to review these claims of error for the first time on appeal. *Walters*, 481 Mich at 387; .

## III.  ARISTA'S VALUE AND RETAINED EARNINGS

### A.  STANDARDS OF REVIEW

On appeal, plaintiff argues that the trial court erred to the extent that it failed to include Arista's retained earnings during the marriage in the marital estate. In her view, the retained earnings constituted marital income even though retained by Arista. Defendant on cross-appeal argues that the trial court should not have included the increase in Arista's value during the term of the marriage in the marital estate because Arista was his separate property, and there was no evidence that plaintiff contributed to the increase in a way that would justify invading his separate property. These claims of error implicate the proper interpretation and application of the statutes governing the division of a marital estate and common law principles of equity. This Court reviews de novo whether the trial court properly selected, interpreted, and applied the relevant statutes. *Sylvan Twp v City of Chelsea*, 313 Mich App 305, 316; 882 NW2d 545 (2015). This Court also reviews de novo whether the trial court properly applied the common law. *Conlin v Upton*, 313 Mich App 243, 254; 881 NW2d 511 (2015).

### B.  SEPARATE PROPERTY AND THE MARITAL ESTATE

We shall first address defendant's claim on cross-appeal that the trial court erred by treating Arista's increased value during the term of the marriage as part of the marital estate.

The Legislature has provided trial court's with broad authority to divide real and personal property that came to either party to a divorce action "by reason of the marriage." MCL 552.19; see also *Reeves v Reeves*, 226 Mich App 490, 493; 575 NW2d 1 (1997). Marital property is property that was acquired or earned by the parties during the marriage and, with certain exceptions, separate property is property that the parties obtained or earned before the marriage. *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). When considering how to divide property in a divorce proceeding, the trial court's first step must be to determine the parties' marital and separate estates. *Reeves*, 226 Mich App at 493-494. "A divorce case is equitable in nature, and a court of equity molds its relief according to the character of the case; once a court of equity acquires jurisdiction, it will do what is necessary to accord complete equity and to conclude the controversy." *Draggoo v Draggoo*, 223 Mich App 415, 428; 566 NW2d 642 (1997) (quotation marks and citations omitted). But the Legislature has limited the authority of courts to invade separate assets: the court may do so only when it determines that equity requires the invasion and the spouse requesting the invasion demonstrates that he or she "contributed to the acquisition, improvement, or accumulation of the property," MCL 552.401, or when it is necessary to do so to support the other spouse, MCL 522.23.

Here, plaintiff did not argue that the trial court should have ordered defendant to pay support out of his separate estate because she did not have sufficient resources. See MCL 522.23. It was also undisputed that defendant's shares of Arista were his separate property. As such, the trial court would usually have been required to find that plaintiff "contributed to the acquisition, improvement, or accumulation" of Arista before it could invade that asset. MCL 522.401. There was some evidence that plaintiff directly supported defendant's efforts to run his business. She testified that she helped organize the Christmas party for the employees, attended trade shows, and offered advice to defendant on various matters; however, the trial court found that she did not directly contribute to the company.

In analyzing whether a spouse has contributed to the acquisition, improvement, or accumulation of a separate asset, Michigan courts have long recognized that a spouse does not have to make a direct contribution before a court will be justified in invading the separate asset. For example, in *Hanaway v Hanaway*, 208 Mich App 278; 527 NW2d 792 (1995), this Court rejected the trial court's finding that the plaintiff, a stay-at-home mother, did not contribute to the development of her husband's company:

> Although initially given to defendant by his father, the interest in the business was a major asset of the marriage that defendant was permitted to cultivate and nurture over the years. It is inequitable to deprive plaintiff of any share of the business or its value on the basis that she enjoyed the benefits of defendant's salary over the years. The fruits of defendant's efforts in the business were both the increase in the value of the business since 1968 and the salary he drew over the years. The parties were building an asset as well as enjoying its fruits on an ongoing basis. That plaintiff's contribution to the asset came in the form of household and family services is irrelevant. The marriage was a partnership. The couple nurtured a business and three children, and watched all four grow. Defendant does not claim that he could have done it all himself. . . . Rather, it appreciated because of defendant's efforts, facilitated by plaintiff's activities at home. [*Id.* at 293-294.]

Our Supreme Court has endorsed the approach stated in *Hanaway*. See *Dart v Dart*, 460 Mich 573, 585 n 6; 597 NW2d 82 (1999) (noting that, "in certain situations, a spouse's separate assets, or the appreciation in their value during the marriage, may be included in the marital estate"). Thus, a stay-at-home spouse can indirectly contribute to the development of a business by relieving his or her spouse of household obligations. Stated another way, caring for children and maintaining the marital household while the other spouse manages a separately owned business can constitute a contribution to the business within the meaning of MCL 522.401.

The trial court did not directly address whether plaintiff provided sufficient indirect support to warrant an invasion of defendant's separately owned business asset. And there was evidence that plaintiff did not provide the kind of support found in a traditional arrangement with a stay-at-home spouse who cares for children. But even if she did not indirectly support defendant's efforts, defendant's efforts alone warranted treating the increased value of Arista as a marital asset.

Although a trial court may only invade separate property under MCL 522.23 or MCL 522.401, the marital estate includes any asset that came to the parties by reason of the marriage. See MCL 522.19; *Cunningham*, 289 Mich App at 201 (stating that the marital estate includes all property acquired or earned during the marriage). As the Supreme Court of Minnesota has explained, when a business increases in value during a marriage as a result of one spouse's direct efforts, the increase is treated as a product of the marital partnership:

> The concept of equitable distribution is a corollary of the principle that marriage is a joint enterprise whose vitality, success and endurance is dependent upon the conjunction of multiple components, only one of which is financial. The nonremunerated efforts of raising children, making a home, performing a myriad of personal services and providing physical and emotional support are, among other noneconomic ingredients of the marital relationship, at least as essential to its nature and maintenance as are the economic factors, and their worth is consequently entitled to substantial recognition. Thus, the extent to which each of the parties contributes to the marriage is not measurable only by the amount of money contributed to it during the period of its endurance but, rather, by the whole complex of financial and nonfinancial components contributed. The function of equitable distribution is to recognize that when a marriage ends, each of the spouses, based on the totality of the contributions made to it, has a stake in and right to a share of the marital assets accumulated while it endured, not because that share is needed, but because those assets represent the capital product of what was essentially a partnership entity. [*Nardini v Nardini*, 414 NW2d 184, 192 (Minn, 1987) (quotation marks and citation omitted).]

Michigan courts have similarly held that an increase in the value of a separately owned asset during the term of the parties' marriage belongs to the marital estate if the asset increased in value as the result of one spouse's active efforts. *Reeves*, 226 Mich App at 496. Courts include the increased value in the marital estate whether viewed as an indirect contribution of the spouse who does not own the separate property under MCL 522.401, or as an increase in the value that came to the owner spouse by reason of the marriage under MCL 522.19. See *Hanaway*, 208 Mich App at 294 (holding that the husband's separately owned business was part

-7-

of the marital estate whether "viewed from the standpoint of whether plaintiff contributed to the acquisition, improvement, or accumulation of the property [under MCL 522.401], or from the standpoint of whether the property appreciated in value during the marriage" under MCL 522.19). It is only when a separately owned asset increases in value without regard to either spouse's active efforts that the increase will remain separate property. See *Dart*, 460 Mich at 585 n 6; *Reeves*, 226 Mich App at 496. Because defendant managed Arista and actively improved its value over the term of the marriage, the trial court did not err when it treated the increased value as part of the marital estate. *Id.*

## C. RETAINED EARNINGS

In what appears to be an issue of first impression in Michigan, plaintiff argues that the net income generated by Arista and not distributed to defendant during the term of their marriage—Arista's retained earnings—was part of the marital estate. For that reason, she maintains, the trial court should have divided Arista's retained earnings, at least to the extent that it found that Arista's value had not increased during the marriage by an amount that was equal to or greater than Arista's retained earnings.

It is true that property earned by one spouse during the term of the marriage is presumed to be marital property. *Byington v Byington*, 224 Mich App 103, 112-113; 568 NW2d 141 (1997). But it is not clear that the revenue generated by an entity that is wholly owned by one spouse as his or her separate property invariably constitutes earnings of that spouse. Michigan courts respect the separate existence of an artificial entity, even when the entity is solely owned by an individual. *Green v Ziegelman*, 310 Mich App 436, 450-451; 873 NW2d 794 (2015). Courts will only disregard an entity's separate existence when the owner has misused the separate existence of the entity and his or her misuse has harmed another. *Id.* at 458-459. Absent circumstances involving the misuse of the corporate form, the trial court would usually be required to respect Arista's separate existence and treat the earnings retained by Arista as its separate property. *Id.*; see also *Kasben v Hoffman*, 278 Mich App 466, 474; 751 NW2d 520 (2008) (stating that, in the absence of evidence of fraud, a trial court in a divorce action has no authority to adjudicate the rights of a third party).

Plaintiff nevertheless maintains that Arista's net income constituted income of the parties because defendant elected to treat Arista as an S-corporation, 26 USC 1362(a)(1), so for that reason, its income was taxed as personal income to him, 26 USC 1366. Whether a separate entity's income should be treated as income of an individual for purposes of Michigan's divorce law involves policy choices beyond those implicated by Congress' authority to tax. As the United States Supreme Court has recognized, the whole subject of domestic relations is generally a matter of state law, not federal law. *McCarty v McCarty*, 453 US 210, 220; 101 S Ct 2728; 69 L Ed2d 589 (1981), superseded by 10 USC 1408(c)(1). So this Court is not bound to ignore Arista's separate existence merely because Congress chose not to tax the income of a closely held corporation when it is included in the owner's personal income for tax purposes.

Plaintiff also relies on foreign authorities that have examined whether a closely held entity's retained earnings should be treated as income to a spouse who owns or controls the entity.[1] The majority of the jurisdictions to have considered the issue in the context of dividing the marital estate have determined that whether and to what extent the retained earnings are part of the marital estate depends on the particular facts of each case. For example, in *Ramon v Ramon*, 963 A2d 128 (Del, 2008), the Supreme Court of Delaware held that the retained earnings of a corporation may be included in the marital estate under Delaware's law. The court explained that a spouse who controls a corporation might use the power to control its distributions to insulate the corporation's earnings from all legal and equitable claims, which was inconsistent with the policy behind the statutes governing the division of the marital estate. *Id.* at 132-133. It held that whether and to what extent the retained earnings should be included in the marital estate depended on a variety of factors:

> [T]he Court must keep in mind that the public policy, mandated in the Act, is to "equitably divide" marital property. That will include a consideration of the values which are at stake, whether the increase in retained earnings resulted from a natural enhancement over which the controlling spouse had little or no control, whether such increase resulted from ordinary and necessary business reasons, whether such increase resulted from an intentional purpose by the controlling spouse to prevent earnings from becoming marital property, the impact of any order on other stockholders, on the corporation and on others with an interest in it; the . . . tax consequences of any order on each spouse and the corporation. [*Id.* at 133-134 (citation omitted).]

Other jurisdictions have similarly held that whether the retained earnings of a closely held corporation should be treated as marital property must be determined on a case-by-case basis. In particular, courts examine whether the owning spouse had the authority to order distributions and whether the entity unreasonably or fraudulently withheld distributions. See *In re Marriage of Steel*, 364 Ill Dec 852, 870; 977 NE2d 761 (Ill App, 2011) (stating that the trial court did not err when it found that the retained earnings were not part of the marital estate because the evidence showed that there were restrictions on the respondent's ability to disburse retained earnings, the business relied on the retained earnings to operate, the entity reimbursed the respondent for his tax payments, and the entity adequately compensated respondent through his salary); *Neibaur v Neibaur*, 142 Idaho 196, 200-201; 125 P3d 1072 (2005) (holding that the retained earnings of a "separate property corporation" may be subject to division if the corporation "unreasonably or fraudulently retained earnings instead of distributing profits as dividends"); *Heineman v Heineman*, 768 SW2d 130, 137-138 (Mo App, 1989) (stating that the retained earnings of a corporation were part of the marital estate because the spouse forwent all compensation for some period of time, which compensation would have been part of the marital

---

[1] As defendant correctly notes, many of the foreign authorities she cites are not on point because they involve application of the child support formulas from those states. See, e.g., *JS v CC*, 454 Mass 652, 661-665; 912 NE2d 933 (2009); *Taylor v Fezell*, 158 SW3d 352 (Tenn, 2005); *Merrill v Merrill*, 587 NE2d 188, 190-191 (Ind App, 1992).

estate, and the retained earnings were directly attributable to her forbearance). Other courts have held that the retained earnings of an entity that was under the sole control of one spouse constituted part of the marital estate without regard to whether it was reasonable for the business to retain the earnings. See *Metz v Keener*, 215 Wis 2d 626, 635-637; 573 NW2d 865 (Wis App, 1997).

We conclude that it would be improper to adopt a rule that retained earnings invariably are the property of the entity until distributed. See, e.g., *Allen v Allen*, 168 NC App 368, 375; 607 SE2d 331 (2005) (holding that as a general matter the "retained earnings of a corporation are not marital property until distributed to the shareholders"). Although such a rule would respect the separate existence of the entity, see *Green*, 310 Mich App at 450-451, and would still allow some division of the retained earnings by dividing the appreciation of the entity that accrued during the term of the marriage, MCL 522.19, it might encourage a spouse to use the separate existence of a closely held entity to shield wealth from his or her spouse. See *Ramon*, 963 A2d at 132-133.

We also do not agree that the retained earnings of a closely held entity must be included within the marital estate whenever the owner spouse has control over the distribution of earnings. See *Metz*, 215 Wis 2d at 635-637. This rule does not take into consideration ordinary business practices. As this Court has already recognized with regard to whether the retained earnings of a closely held corporation should be imputed to a parent for purposes of calculating child support, a business has expenses and concerns that must be accounted for when determining whether to retain earnings. Even a sole shareholder-owner must account for his or her business's obligations to creditors and employees. See *Diez v Davey*, 307 Mich App 366, 383, 384; 861 NW2d 323 (2014) (recognizing that closely held corporations are separate entities whose retained earnings belong to the corporation and stating that "a business owner must exercise judgment in the determination of what funds are required to maintain the business over time and what funds are available for distribution to shareholders; and, as a general matter, funds retained for necessary and legitimate business reasons are not available to the parent and need not be included as income" for purposes of child support). As this Court in *Diez* explained, an owner parent must be afforded broad freedom to make reasonable business decisions, which should be respected even though there is evidence that the owner could have distributed more earnings:

> [P]rovided that the operation of a parent's business is in keeping with historical practices, that those practices can be described as the reasonable exercise of business judgment, and that there is no evidence of an improper effort to make funds unavailable for child support, nothing in the [child support formula] mandates that the reality of how a parent operates a business, and has historically operated a business, should be dismissed in favor of an alternative method in which the business could be conducted. [*Id.* at 384-385.]

We conclude that a similar approach should be used when determining whether a closely held entity's retained earnings are part of the marital estate. When presented with a dispute over retained earnings, trial courts must determine on a case-by-case basis whether the earnings retained by the entity should be treated as marital income for purposes of dividing the marital estate. To ensure respect for the entity's separate existence, *Green*, 310 Mich App at 450-451, courts should presume that that the retained earnings are not part of the marital estate until the

spouse claiming otherwise demonstrates that the facts warrant including some or all of the earnings in the martial estate. See *Magee v Magee*, 218 Mich App 158, 165; 553 NW2d 363 (1996) (recognizing that the party seeking to include an asset for distribution in the property settlement bears the burden of proving the reasonably ascertainable value of the asset). The entity's retained earnings should not be treated as part of the marital estate, notwithstanding their tax treatment, unless the spouse seeking to include the earnings in the marital estate first demonstrates that the owner spouse had the authority to distribute the earnings. Additionally, although a finding that the owner spouse had sufficient control to compel the entity to retain or distribute its earnings is a necessary condition, the fact that the spouse had such control does not in and of itself mandate the conclusion that the retained earnings are part of the marital estate. See *Ramon*, 963 A2d at 133-134. Rather, trial courts should examine the historical operations of the entity, *Diez*, 307 Mich App at 384; the business's need for operating capital, whether the owner-spouse was reasonably compensated for his or her work on behalf of the entity, *Heineman*, 768 SW2d at 137-138, whether the owner-spouse deliberately caused the entity to retain funds so as to deprive the marital unit of the income, *Neibaur*, 142 Idaho at 200-201, and any other relevant factor. If, under the totality of the circumstances, the trial court finds that the entity unreasonably withheld distribution of its earnings, the trial court should treat the unreasonably withheld earnings as marital income for purposes of dividing the marital estate under MCL 522.19.

In this case, the trial court did not treat any portion of the earnings retained by Arista as marital income. It also did not make a specific finding as to whether defendant unreasonably caused Arista to withhold distributions. Nevertheless, there was evidence that defendant had historically been very conservative with his distributions. He testified that he only increased his salary after his accountant advised him that there might be adverse tax consequences if he did not pay himself a commercially reasonable salary. Thereafter, he increased his salary, even though he felt that he did not need the additional salary. There was also evidence that defendant only caused Arista to make substantial distributions beyond his normal salary to cover his tax liabilities. He stated that such distributions would occur when they were too low on the estimate of Arista's profitability and he needed a distribution to pay the tax liability. He testified that he did not personally receive the distribution. He otherwise left Arista's earnings with the corporation. There was no evidence that defendant deviated from his usual practices during the term of the marriage or that his practices fraudulently deprived the marital unit of income. Finally, there was evidence that Arista's retained earnings were factored into the increased valuation of the business. Thus, plaintiff received a share of the increased value in the business attributable to the retained earnings. On this record, we conclude that the trial court did not err when it refused to treat some or all of Arista's retained earnings as marital income.

IV. DISPOSITIONAL RULINGS

A. STANDARDS OF REVIEW

Both parties raise additional claims of error concerning the trial court's division of the marital estate. In an appeal from a trial court's dispositional determinations in a divorce case, this Court reviews the trial court's factual findings for clear error. *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992). If this Court upholds the factual findings, this Court must then determine "whether the dispositive ruling was fair and equitable in light of those facts." *Sparks*,

-11-

440 Mich at 151-152. This Court should affirm the dispositional ruling unless it is left with the firm conviction that the result was inequitable. *Id.* at 152.

## B. VALUE OF ROSEWOOD HOME

Plaintiff argues that the trial court clearly erred when it found that the Rosewood home had not increased in value. There was very little evidence concerning any change in the actual fair market value of the home. The parties submitted evidence that defendant purchased the home for $420,000. The parties also submitted the tax records for the home that showed that the taxing authority felt that the home was worth less than what defendant paid for it when plaintiff filed for divorce. Plaintiff elected to not have an independent appraisal done for the property. Instead, she relied on the evidence that the taxing authority had determined that the home had gone up in value even if its assessed value was not yet equal to the amount paid by defendant when he purchased the home. On appeal, she suggests that the relevant inquiry was not whether the home increased in value over and above what defendant paid for it, but rather whether it increased in value over what he should have paid for it.

Once the parties placed the value of the home at issue, the trial court had an obligation to find its value and, in this case, to find the change in value over the term of the marriage. See *Olson v Olson*, 256 Mich App 619, 627-628; 671 NW2d 64 (2003). The trial court was not required to value the home using any one method. *Kowalesky v Kowalesky*, 148 Mich App 151, 155-156; 384 NW2d 112 (1986). The evidence that defendant actually paid $420,000 for the property was relevant and admissible to establish the property's fair market value of $420,000 on that date. See *Professional Plaza, LLC v Detroit*, 250 Mich App 473, 476; 647 NW2d 529 (2002). Similarly, the trial court could properly rely on the state equalized value as evidence that the home was worth less than what defendant paid by the end of the marriage. See *Lee v Lee*, 191 Mich App 73, 76; 477 NW2d 429 (1991). The fact that the trial court used different methods to find the starting and ending value of the property does not alter this Court's review of whether the trial court clearly erred in its valuations. *Kowalesky*, 148 Mich App at 155-156. Plaintiff has not met her burden to demonstrate that the trial court's finding was clearly erroneous. *Beason v Beason*, 435 Mich 791, 804; 460 NW2d 207 (1990). There is record evidence to support the trial court's finding and we are not definitely and firmly convinced that the trial court's finding on the change in value was clearly erroneous. *Id.* at 804-805.

## C. EQUITABLE DIVISION

Plaintiff also argues that it was inequitable for the trial court to award her only 40% of the marital estate. There are no strict mathematical formulations for the division of a marital estate: the division must be equitable, not equal. *Sparks*, 440 Mich at 159. The portion to be awarded to each party depends on a variety of equitable factors. *Id.* The factors include, but are not limited to, the following:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Id.* at 159-160.]

-12-

The trial court determined that it would not be equitable to divide the marital estate equally. In making that determination, the trial court relied on its findings that defendant was responsible for more than 95% of the marital expenses, that the parties did not have children, and that the marriage was fairly short. The trial court was not obligated to consider every factor; it had only to consider those factors that were relevant. *Id.* at 158. Thus, standing alone, it was not error for the trial court to give more weight to the duration of the marriage and the contribution of the parties to the creation of the marital estate.

As the trial court noted, this was a second marriage for both parties and they did not have children together. Moreover, plaintiff came to the marriage with a net worth that was approximately $5,000 to $10,000. She also chose to leave her employment early in the marriage to focus on building a business of her own. Plaintiff would not have been able to focus exclusively on her business venture were it not for defendant's financial support. And, because the business venture struggled early on, plaintiff's efforts to grow the business did not significantly contribute to an increase in the marital estate. The evidence fully supported the trial court's factual findings. Despite contributing very little to the marital estate, and even with an award of only 40% of the estate, plaintiff was leaving with significantly greater resources than she had at the start of the marriage. Under the totality of the circumstances, the award was equitable, even if not equal. *Sparks*, 440 Mich at 159.

On appeal, plaintiff suggests that the trial court had an obligation to divide the earnings retained by Arista equally as marital income, noting she was unaware of any Michigan authority that "justifies the division of marital ***earnings*** other than equally." Even setting aside the fact that the trial court did not err when it refused to include Arista's retained earnings as part of the marital estate, plaintiff's assertion is not an accurate statement of the law. The Court in *Sparks* held that a trial court is not required to divide the marital estate equally, and it did not make an exception for any particular type of marital asset. *Id.* at 159-160. Once earned, income is a marital asset in one form or another. *Byington*, 224 Mich App at 112-113; MCL 552.19. And, if the equities warranted it, the trial court could divide even cash assets using the factors stated in *Sparks*. The trial court considered the relevant factors in making its disposition, and its explanation for the unequal division did not suggest that it was punishing plaintiff. See *Berger v Berger*, 277 Mich App 700, 721-722; 747 NW2d 336 (2008).

We are not left with the firm conviction that the trial court's division of the marital estate was not fair and equitable in light of the facts. *Sparks*, 440 Mich at 151-152.

## D. EQUALIZATION PAYMENT

Finally, we shall address defendant's claim on cross-appeal that the trial court erred when it refused to award plaintiff a share of the retirement accounts through a qualified domestic relations order (QDRO). At the hearing on his motion to clarify how the equalization payment would be made, defendant argued that the court should award plaintiff a portion of her award through a QDRO. He stated that he did not have enough cash to pay her the equalization payment. He argued too that it would only be fair that plaintiff should have to pay the tax penalty if she wanted to cash out the retirement benefit. The trial court disagreed that that was the most equitable resolution of the dispute. It stated that the marriage was short term, and it expected the payments to also be made over a relatively short term. It was also concerned about

the additional costs to plaintiff that might be involved if it were to use a QDRO. Accordingly, it elected to order defendant to pay one-third of the total equalization payment within 30 days and the remainder over 27 months, but with no interest.

The trial court had the discretion to structure the equalization payment consistent with equity. *Hatcher v Hatcher*, 129 Mich App 753, 765-768; 343 NW2d 498 (1983). In arguing that the trial court's resolution was inequitable because it would cost him more, defendant ignores the fact that he has a substantial premarital estate and significantly higher income than plaintiff. Under the facts of this case, the trial court could reasonably conclude that it would be more equitable to award plaintiff her share of the marital estate over a shorter term and without requiring her to bear the costs associated with a QDRO. We are not left with the firm conviction that the trial court's decision to structure the award the way that it did was inequitable. *Sparks*, 440 Mich at 151-152.

Because neither party has demonstrated any errors warranting relief, we affirm the trial court's judgment.

We affirm. Neither party having prevailed, neither may tax costs. MCR 7.219(A).

/s/ Jane E. Markey
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause