**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted: February 8, 2021
Date Decided: March 8, 2021

Karen Jacobs, Esquire
Alexandra M. Cumings, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Keith J. Harrison, Esquire
Christopher Flynn, Esquire
Daniel W. Wolff, Esquire
Jerome P. DeSanto, Esquire
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Corinne Elise Amato, Esquire
Prickett, Jones & Elliott, P.A
1310 King Street
Wilmington, Delaware 19801

Thomas J. Sullivan, Esquire
Shook, Hardy & Bacon L.L.P.
2001 Market Street, Suite 3000
Philadelphia, Pennsylvania 19103

Amy Y. Cho, Esquire
Kathleen M. Ryan, Esquire
Shook, Hardy & Bacon L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, Illinois 60606

RE: *Envolve Pharmacy Solutions, Inc., et al v. Rite Aid Hdqtrs. Corp., et al.*
C.A. No. N19C-12-214 PRW CCLD

Dear Counsel:

The Court recently issued its Memorandum Opinion (the "Opinion")

resolving Rite Aid's Motion to Dismiss.[1]  This Letter Order now addresses the

---

[1]  *Envolve Pharmacy Solutions, Inc., et al. v. Rite Aid Hdqtrs. Corp., et al*, 2021 WL 140919
(Del. Super Ct. Jan. 15, 2021).

Centene Entities' Motion for Partial Reargument of that decision.[2]  For the reasons

that follow, the reargument request is **DENIED.**

## I.  THE UNDERLYING DISPUTE[3]

This dispute between the plaintiff group of health insurance and pharmacy

benefit companies (collectively "Centene Entities")[4], and the defendant pharmacy

Rite Aid Headquarters Corporation and Rite Aid Corporation (collectively "Rite

Aid"), centers on the proper definition of Usual and Customary Price ("U&C Price")

in certain operative agreements between them.   The Centene Entities filed a

Complaint drawing six causes of action.[5]   They allege that Rite Aid fraudulently

---

[2]   Centene Entities' Mot. for Reargument, Jan. 25, 2021 (D.I. 65).

[3]   For a fuller recitation of the facts underlying the dispute in this litigation, refer to Section I of the Opinion: *Envolve Pharmacy Solutions, Inc.*, 2021 WL 140919, at *2.

[4]   The plaintiffs in this case are dozens of entities and subsidiaries under common ownership of nonparty Centene Corporation.  There are two major groupings of these subsidiary plaintiffs.  The first are the "Centene Health Plans" consisting of 48 subsidiaries; the second are the "Health Net Plans" consisting of nine subsidiaries. Compl. ¶¶ 11-12, Dec. 23, 2019 (D.I. 1).  Both groups of plaintiff subsidiaries are third-party payors that offer both commercial and government-sponsored plans, including pharmaceutical benefits, to members. *Id.*  The remaining two plaintiff entities, also Centene Corporation subsidiaries, are Envolve Pharmacy Solutions, Inc. ("Envolve") and Health Net Pharmaceutical Services ("HNPS"). *Id.* ¶¶ 14-15.  Envolve, formerly known as US Script, was the entity that entered into the disputed 2003 and 2013 Contracts. For ease of understanding, the plaintiffs will be collectively referred to as "the Centene Entities."

[5]   Compl. ¶¶ 70-86 (Count 1 Fraud as to all plaintiffs), Compl. ¶¶ 87-94, 110-17 (Counts 2 and 4 Breach of Contract as to Envolve), Compl. ¶¶ 95-109, 118-32 (Counts 3 and 5 Breach of Contract as to non-Envolve plaintiffs), Compl. ¶¶ 133-37 (Count 6 Unjust Enrichment as to all plaintiffs).

misrepresented the benchmark prices it charged customers for pharmaceuticals, so as to get higher payments from the Centene Entities than Rite Aid is entitled to under its 2003 and 2013 Contracts.[6]  The Centene Entities say that Rite Aid carried out this fraud by reporting to them an inflated sticker price that Rite Aid customers never paid, while charging a discount price to holders of customer loyalty cards from its Rx Savings Card ("RSC") Program.[7]

The Centene Entities' Complaint alleges that in reporting the U&C Price of the pharmaceuticals sold, Rite Aid failed to include the discounted prices offered through its RSC.[8]  The Centene Entities characterize the RSC as a simple shopper discount card, without any fees or membership requirements.[9]  And, they say, Rite Aid used this RSC pricing to its advantage to overstate the sticker prices of its pharmaceuticals in later payment claims to them.[10]  According to the Centene Entities, these actions not only breached contractual agreements between the parties,

---

[6]  *Id.* ¶ 71.

[7]  *Id.* ¶ 71.

[8]  *Id.* ¶¶ 61-62.

[9]  *Id.* ¶ 30.

[10]  *Id.* ¶¶ 58, 61-62.

they also caused the Centene Entities to overpay Rite Aid an unspecified sum that could be in the millions of dollars.[11]

Rite Aid sought wholesale dismissal of the Centene Entities' Complaint on several grounds.[12] After considering the record and the parties' arguments, the Court concluded that some of the Centene Entities' counts failed, while others survived Rite Aid's motion to dismiss.[13] The Court dismissed the Centene Entities' fraud claim (Count 1), as the damages pled were duplicative of the Centene Entities' breach-of-contract claim.[14] Additionally, the Court dismissed the non-Envolve plaintiffs' third-party beneficiary breach-of-contract claims (Counts 3 & 5) as the 2013 Contract specifically barred any third-party claims.[15] Lastly, because the Court found that Envolve had a viable breach-of-contract claim (Counts 2 & 4), its Opinion dismissed its unjust enrichment claim (Count 6) solely as to Envolve, permitting the claim to move forward for the non-Envolve plaintiffs.[16] Now before

---

[11] *Id.* ¶¶ 86, 87-94, 110-17.

[12] Rite Aid's Op. Br., Feb. 28, 2020 (D.I. 29).

[13] *Envolve Pharmacy Solutions, Inc.*, 2021 WL 140919, at *1, 11.

[14] *Id.*, at *8-9.

[15] *Id.*, at *10-11.

[16] *Id.*

the Court is the Centene Entities' Motion for Partial Reargument filed under Superior Court Civil Rule 59.

## II. THE PARTIES' CONTENTIONS NOW

### A. CENTENE ENTITIES' MOTION FOR PARTIAL REARGUMENT

The Centene Entities ask the Court to reconsider its dismissal of the Centene Entities' fraud claim (Count 1) as to all plaintiffs, and the unjust enrichment claim (Count 6) as to Envolve.[17] The Court dismissed the fraud claim because, while it met Superior Court Civil Rule 9(b)'s heightened pleading standard, the damages mirrored the Centene Entities' breach-of-contract damages.[18] The Centene Entities now argue this dismissal was misguided because, in its view, the requirement of separate damages does not apply to parties who are not a part of the contract.[19] Thus, according to the Centene Entities, the Court should reconsider its dismissal of the fraud claim as to the non-Envolve plaintiffs, who it says weren't parties to either the

---

[17] Centene Entities' Mot. for Reargument, at 6.

[18] *Envolve Pharmacy Solutions, Inc.*, 2021 WL 140919, at *8-9.

[19] Centene Entities' Mot. for Reargument, at 2-3, 7 (citing *Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*, 2011 WL 710970, at *3-4 (D. Del. Feb. 22, 2011) and *Israel Disc. Bank of New York v. First State Depository Co., LLC*, 2012 WL 4459802, at *10 (Del. Ch. Sept. 27, 2012)).

2003 or 2013 Contracts, and as to Envolve for any claim after the 2016 termination of the 2013 Contract.[20]

With regard to the Centene Entities' unjust enrichment claim, the Court dismissed this claim as to Envolve as it is a party to the 2003 and 2013 Contracts.[21] The Centene Entities request reconsideration of this decision with regard to the period after the supposed termination of the 2013 Contract in March 2016.[22] The Centene Entities insist that by dismissing Envolve's fraud and unjust enrichment claims, the Opinion leaves Envolve without a remedy for damages suffered for the period after the 2016 termination of the 2013 Contract.[23]

## B. RITE AID'S OPPOSITION

Rite Aid says that the Centene Entities' reargument contentions are simply incorrect and that reargument is inappropriate given that the issues they now raise had already been addressed in the parties' original briefs, oral argument, and the Opinion.[24]   Rite Aid insists that "[e]very accusation of potentially fraudulent

---

[20]   *Id.*, at 5-6.

[21]   *Envolve Pharmacy Solutions, Inc.*, 2021 WL 140919, at *9-10.

[22]   Centene Entities' Mot. for Reargument, at 3, 6, 8-9.

[23]   *Id.*, at 6.

[24]   Rite Aid's Opp'n, at 3, 5-6, Feb. 8, 2021 (D.I. 68)

behavior here necessarily involves the breach of some contractual obligation."[25]

Thus, even without a contract between the non-Envolve plaintiffs and Rite Aid, the fraud claim still fails.[26]

Rite Aid also notes that the Centene Entities reliance on the *Penn Mut. Life Inc. Co.* case is misplaced as there was no breach-of-contract claim in that case.[27] Additionally, Rite Aid argues that the *Israel Discount Bank* case relied on by the Centene Entities is factually distinguishable as this case does not implicate any independent intentional tort (such as conversion).[28]

Regarding Envolve's post-March 2016 fraud and unjust enrichment claims, Rite Aid contends that the Centene Entities failed to allege an injury other than one

---

[25]  *Id.* (citing to Rite Aid's Mot. to Dismiss Rep. Br., at 21-22). *See also id.*, at 3-4 (citing to MTD hearing transcript) ("Your Honor, our position is that a reasonable inference from the complaint and a fair inference from the complaint is that although plaintiffs disavow specific reliance on the identified contract, these are contracts behind the scenes here for sure, and they acknowledge as much in their complaint and in their briefing when they say, for example, that Caremark was working for them and that [HNPS] and Caremark were working on their behalf to process claims from Rite Aid. Certainly, Your Honor, the claims process - - the claims that Rite Aid submitted through [HNPS] and through Caremark did not happen by accident. Those happened for a reason . . . a fair inference is . . . that there was an agreement in the background . . . that those agreements are at issue.").

[26]  *Id.*, at 4-5.

[27]  *Id.*, at 4 n. 1.

[28]  *Id.*

arising out of a breach of a contractual duty and the Court correctly recognized this in its Opinion.[29]  So, Rite Aid says, the Centene Entities' Motion for Reargument should be denied.[30]

## III.  STANDARD OF REVIEW

A motion for reargument permits a trial court to reconsider its findings of fact, conclusions of law, or judgment.[31]  "Delaware law places a heavy burden on a [party] seeking relief pursuant to Rule 59."[32]  The moving party has the burden to demonstrate that the Court must correct an error of law or prevent manifest injustice deriving from its judgment.[33]  "A Rule 59(e) application is not an avenue for the moving party to raise new arguments or to rehash arguments already decided by the

---

[29]  *Id.*, at 6, 7 ("The Court recognized the post-March 2016 relationship between Rite Aid and Envolve necessarily involved contractual obligations, and therefore Envolve is prohibited from seeking extra-contractual remedies.").

[30]  *Id.*, at 7.

[31]  *See Ramon v. Ramon*, 963 A.2d 128, 136 (Del. 2008) ("A motion for reargument is the proper device for seeking reconsideration by the Trial Court of its findings of fact, conclusion of law, or judgment.") (internal citations omitted).

[32]  *Kostyshyn v. Comm'rs of Town of Bellefonte*, 2007 WL 1241875, at \*1 (Del. Super. Ct. Apr. 27, 2007).

[33]  *See Hessler, Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969) ("manifest purpose of all Rule 59 motions is to afford the Trial Court an opportunity to correct errors").

Court."[34]  And such motion will be denied unless the Court has "overlooked a controlling precedent or legal principles," or "has misapprehended the law or facts such as would affect the outcome of the decision" challenged.[35]  Upon a Rule 59(e) reargument motion, the Court "will determine from the motion and answer whether reargument will be granted."[36]

## IV.  DISCUSSION

### A.  Count 1 – Fraud as to the Non-Envolve Plaintiffs.

The Court's Opinion dismissed Count 1 in its entirety as the Centene Entities failed to plead any injury separate from its breach-of-contract claim.[37]  The Centene Entities argue that because the non-Envolve plaintiffs never had any contract with Rite Aid, the economic loss doctrine does not apply to those plaintiffs' claims.[38]  The Centene Entities rely primarily on two cases to rehash the same arguments made in

---

[34]  *Maravilla-Diego v. MBM Construction II, LLC*, 2015 WL 5055955, at *1 (Del. Super. Ct. Aug. 27, 2015) (citing cases).

[35]  *Cummings v. Jimmy's Grille, Inc.*, 2000 WL 1211167, at *2 (Del. Super. Ct. Aug. 9, 2000).

[36]  Super. Ct. Civ. R. 59(e).

[37]  *Envolve Pharmacy Solutions, Inc.*, 2021 WL 140919, at *8-9.

[38]  Centene Entities' Mot. for Reargument, at 7.

its briefing on the motion to dismiss.[39]  But, Rite Aid is correct here—the Centene Entities' reliance on these cases is misplaced because they are just too factually distinguishable to be of much assistance here.[40]

In short, the Court neither overlooked nor misapprehended any law or facts that would have changed the outcome for the Centene Entities.  In coming to its decision, the Court fully understood the relationships between the parties and which parties had contractual obligations and relationships with each other. And the Centene Entities repetition of that already understood doesn't change the reality that the Centene Entities' fraud claim is rooted in Rite Aid's failure to live up to its contractual obligation to report the U&C pricing when submitting its claims.[41]  When opposing dismissal, the Centene Entities did expressly contend that "[i]n Delaware, where a contract exists, the economic loss doctrine does not apply if the duty breached for fraud 'arise[s] independently of the underlying contract.'"[42]  Yet, the

---

[39]  *Id.* (citing *Penn Mut. Life Ins. Co.,* 2011 WL 710970, at *3-4; *Israel Disc. Bank of New York*, 2012 WL 4459802, at *10). *See also* Centene Entities' Opp'n Br., at 32, Apr. 15, 2020 (D.I. 39).

[40]  Rite Aid's Opp'n Br., at 4 n. 1.

[41]  Compl. ¶¶ 70-86 (specifically ¶ 71 "Rite Aid deliberately submitted inflated U&C prices in the NCPDP field 426-DQ on millions of claims paid by Centene that were significantly higher than the RSC Program prices for prescription drugs.").

[42]  Centene Entities' Ans. Br., at 33 (citing *Brasby v. Morris*, 2007 WL 949485, at *7 (Del. Super. Ct. Mar. 29, 2007)) (D.I. 39).

Centene Entities then failed to plead a fraud claim arising out of facts independent of its breach-of-contract claim or to identify any obligation arising independently of contract-derived terms.[43]    Accordingly, the Centene Entities' Motion for Reargument is denied as to the  non-Envolve plaintiffs' fraud claim.

**B. Counts 1 (Fraud) and 6 (Unjust Enrichment) as to Envolve post-March 2016.**

In its motion, the Centene Entities essentially ask the Court to now break up its claims into specific time periods to allow Envolve to revive its fraud and unjust enrichment claims for the period following the termination of the 2013 Contract in March 2016.[44]  But Envolve never pled an adequate individual non-contract-based claim for just the post-March 2016 period.[45]  And its attempt to do so now falls short.

*First*, crediting what the Centene Entities now alleges, Rite Aid's obligation to invoice the U&C price in its reimbursement claims would have ceased upon the

---

[43]  *See Alltrista Plastics, LLC v. Rockline Indus., Inc.*, 2013 WL 5210255, at *4 (Del. Super. Ct. Sept. 4, 2013) (finding that the intentional misrepresentation claim is not barred by the economic loss doctrine as it rose out of facts independent from the breach-of-contract claim).

[44]  Centene Entities' Mot. for Reargument, at 6.

[45]  And it is not generally the Court's duty to dissect a single claim for either dismissal or rescue of its constituent theories of liability. *See inVentiv Clinical Health, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *4-6 (Del. Super. Ct. Jan. 26, 2021) (declining to parse and dismiss various theories of liability articulated in one breach-of-contract count).

termination of the 2013 Contract. And without this contract, it seems there was nothing binding Rite Aid to bill the contract-defined U&C price on the claims it submitted.[46] Indeed, the Centene Entities' allegations reveal no reasonably discernable alternative source for its post-2016 fraud or unjust enrichment claims. Put simply, without an agreement, Envolve left itself nothing to remedy for its post-March 2016 through 2019 payments.

*Second*, as the Court's rulings were on a Rule 12(b)(6) motion, dismissal of these counts was proper. The standard on such a motion to dismiss requires the Court to consider all well-pled allegations as true and determine whether a plaintiff could recover on any reasonably conceivable set of circumstances susceptible of proof in the *complaint*.[47] Nowhere in the Complaint does it state that the 2013 Contract terminated in 2016. Rather, the first time the Centene Entities make such

---

[46] *See Capital Management Co. v. Church Ins. Co*., 2004 WL 2191182, at *1 (Del. Super. Ct. Sept. 10, 2004) ("When the contract expired it extinguished all obligations and duties between the parties, including any contractual right of indemnification between the parties."); *see also, Litton Financial Printing Div. v. N.L.R.B.*, 501 U.S. 190, 205 (1991) (holding that an alternative interpretation of *Nolde Brothers* "fails to recognize that an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied."); *Mendez v. Puerto Rican Intern. Cos., Inc*., 2011 WL 2909378, at *3 (3d Cir. July 21, 2011) (citing *Litton Financial Printing Div.,* 501 U.S. at 206).

[47] *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (*quoting* Superior Court Civil Rule 12(b)(6)).

a suggestion is in its brief opposing Rite Aid's motion to dismiss, stating: "[s]imilarly, for the period April 2016 through December 2019, neither Envolve nor the Centene Health Plans had a contract with Rite Aid. Compl. ¶ 49."[48] But Paragraph 49 of the Complaint doesn't say this. Rather, it simply states: "Centene Health Plans and their associated PBM, Envolve, began paying Rite Aid through Caremark beginning in April 2016."[49] It is hardly evident from that paragraph—or anything else in the Complaint—how the Court was to divine that the 2013 Contract ended in 2016 and that Rite Aid had taken on some other imposed or freestanding pricing duty. In turn—based on what is actually in the Complaint—there is no reasonably conceivable basis for recovery on these claims. So, if in reality there is, the Court's dismissal of Envolve's claims sprung not from its own misinterpretation of the facts or law, but rather from the Centene Entities' failure to properly plead its claims in its Complaint.

## V. CONCLUSION

Given that the Centene Entities failed to shoulder Rule 59's heavy burden, and that the Court did not misinterpret or overlook any facts or law when deciding

---

[48] Centene Entities' Ans. Br., at 12 (D.I. 39).

[49] Compl. ¶ 49.

Rite Aid's motion to dismiss, the Centene Entities' Motion for Partial Reargument

thereof is **DENIED.**

    **IT IS SO ORDERED.**

                    Paul R. Wallace, Judge

cc: All Counsel via File and Serve