**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

November 13, 2024

Susan W. Waesco, Esquire
Thomas P. Will, Esquire
Courtney Kurz, Esquire
Taylor A. Christensen, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, Delaware 19801

Matthew F. Davis, Esquire
David A. Seal, Esquire
Callan R. Jackson, Esquire
Adriane M. Kappauf, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801

> RE: *Comcast Cable Communications Management, LLC v. CX360, Inc.*,
> C.A. No. 2024-0991-LWW

Dear Counsel:

This letter opinion resolves CX360, Inc.'s motion for reargument under Court of Chancery Rule 59(f).[1] The litigation concerns whether CX360 had the contractual right to early termination of its service contract with Comcast Cable Communications Management, LLC.[2] I previously set an expedited schedule so that the matter could be resolved by year end. I also entered a status quo order maintaining the parties' contractual obligations in the interim. CX360 asks that I

---

[1] Def.'s Mot. for Rearg. (Dkt. 22).

[2] Tr. of Sept. 30, 2024 Telephonic Oral Arg. and Ruling of the Court on Pl.'s Mot. to Expedite and for Entry of a Status Quo Order (Dkt. 35) ("Sept. Hr'g Tr.").

1

reconsider granting that status quo order. For the reasons outlined below, its request

is denied.

## I.   BACKGROUND

CX360 is a private-equity-owned company that has been Comcast's exclusive

provider of interactive voice recording (IVR) services since 2014.[3] CX360's IVR

services are provided to Comcast under a Master Services Agreement (the "MSA")

set to expire on February 28, 2025.[4] Earlier this year, Comcast chose a different IVR

provider to take over post-expiration of the MSA. In response, on July 31, 2024,

CX360 sent Comcast a letter purporting to terminate the MSA, effective October 31,

2024.

In its termination letter to Comcast, CX360 wrote that it was "willing to

novate the [MSA] to allow Comcast to continue utilizing [CX360's services] while

Comcast works toward transitioning to a new solution for [IVR] and related

services."[5] On August 14, CX360 delivered to Comcast a proposed Novation

Agreement. It allegedly includes terms less favorable to Comcast than those in the

MSA, including on fee structure and intellectual property rights.[6]

---

[3] Verified Compl. for Specific Performance (Dkt. 1) ("Compl.") ¶¶ 8, 17; Compl. Ex. A.

[4] Compl. ¶ 21; Compl. Ex. B § 4.

[5] Compl. ¶ 43.

[6] *Id.* ¶¶ 50-55; Compl. Ex. D.

The parties tried to resolve their differences during negotiations in August and September.[7] After discussions proved unsuccessful, Comcast filed this litigation on September 24, advancing breach of contract, breach of the implied covenant of good faith and fair dealing, and reformation claims.[8] It also filed a motion to expedite this action and obtain a post-trial ruling before October 31 or, in the alternative, for a status quo order requiring the parties to continue performing under the MSA until the case is resolved on the merits.[9]

On September 30, I granted Comcast's motion to expedite.[10] I rejected CX360's argument that Comcast's requests were barred entirely by laches.[11] But given the two-month gap between CX360's termination letter and Comcast's complaint, I set a trial by year end rather than October 31 and entered a status quo order maintaining the parties' respective positions until then.[12] To address Comcast's allegations of irreparable harm and the respective equities, the status quo

---

[7] Compl. ¶¶ 58-61.

[8] Dkt. 1.

[9] Compl. ¶ 3.

[10] Sept. Hr'g Tr. 40-43.

[11] *Id.* at 44.

[12] *Id.* at 44-45.

order maintained the parties' obligations under the MSA pending resolution of the merits.[13]

CX360 now seeks reconsideration of that ruling, asserting that the status quo order I granted was "in effect a preliminary injunction."[14] It argues that I should have applied the reasonable probability of success instead of the colorability standard to assess the merits of Comcast's claims.[15] And it contends that Comcast failed to meet the higher standard.[16]

CX360 also takes issue with my irreparable harm analysis. It believes that the Novation Agreement would address any harm to Comcast and that money damages could solve the rest.[17] It further claims that Comcast's assertions of irreparable harm lack support.[18]

---

[13] *Id.* at 45 (citing *P.C. Connection, Inc. v. Synygy Ltd.*, 2021 WL 57016 (Del. Ch. Jan. 7, 2021) and *Insituform Techs. v. Insitu, Inc.*, 1999 WL 240347 (Del. Ch. Apr. 19,1999)).

[14] Def.'s Mot. for Rearg. ¶¶ 1, 7-9.

[15] *Id.* ¶¶ 16-17 (arguing that the duration of the status quo order makes it effectively a preliminary injunction); *see also id.* ¶¶ 10-11 (arguing that Comcast's delay in filing this suit supports application of the reasonable probability standard).

[16] *See id.* ¶¶ 17, 19.

[17] *Id.* ¶ 28 (citing Sept. Hr'g Tr. 20-21, 43).

[18] *Id.* ¶ 29.

## II.    ANALYSIS

Rule 59(f) allows the Court of Chancery to correct errors before an appeal.[19] The movant faces a "heavy burden" to show that the court "overlooked a decision or principle of law that would have controlling effect or . . . misapprehended the law or the facts so that the outcome of the decision would be affected."[20] "[A] motion for reargument is 'not a mechanism for litigants to relitigate claims already considered by the court.'"[21] Nor may a party "present a new argument for the first time in a motion for reargument."[22] Failure to present an argument in the initial hearing will result in waiver.[23]

---

[19] Ct. Ch. R. 59(f); *Ramon v. Ramon*, 963 A.2d 128, 135 (Del. 2008) ("The manifest purpose of all Rule 59 motions is to afford the Trial Court an opportunity to correct errors prior to appeal[.]" (citation omitted)).

[20] *ITG Brands, LLC v. Reynolds Am., Inc.*, 2022 WL 16825874, at *1 (Del. Ch. Nov. 7, 2022) (first quoting *In re ML/EQ Real Est. P'ship Litig.*, 2000 WL 364188, at *1 (Del. Ch. Mar. 22, 2000); and then quoting *Mainiero v. Microbyx Corp.*, 699 A.2d 320, 321 (Del. Ch. 1996)).

[21] *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 975581, *1 (Del. Ch. Mar. 4, 2010) (citation omitted), *aff'd*, 7 A.3d 485 (Del. 2010); *see also Fisk Ventures, LLC v. Sengal*, 2008 WL 2721743, at *1 (Del. Ch. July 3, 2008) ("[R]elief under Rule 59 'is available to prevent injustice'—not to offer a forum for disgruntled litigants to recast their losing arguments with new rhetoric." (citation omitted)).

[22] *inTEAM Assocs., LLC. v. Heartland Payment Sys., Inc.*, 2016 WL 6819734, at *2 (Del. Ch. Nov. 18, 2016).

[23] *Id.*

Moreover, decisions to expedite matters and to enter status quo orders are within this court's discretion.[24] "When the decision that is the subject of reargument rests on the court's exercise of its discretion . . . 'no fact or legal precedent may "compel" a different result absent a showing of abuse of discretion.'"[25]

None of CX360's arguments satisfy these standards.

### A.    The Standard Applied

CX360 argues that the wrong standard was applied to the motion for a status quo order.[26]  It believes that the reasonable probability of success—rather than colorability—standard should have applied.  CX360 failed to make this argument in opposing Comcast's motion for a status quo order or during oral argument.  It is therefore waived.[27]

Even if CX360's argument had been properly raised, it would fail.  I did not misapprehend the applicable standard.  When a status quo order is sought in "a

---

[24] *See Corp. Prop. Assocs. 8, L.P. v. AmerSig Graphics, Inc.*, 1993 WL 499005, at *1 (Del. Ch. Nov. 17, 1993) (addressing the discretionary nature of expediting an action); *R&R Cap. LLC v. Merritt*, 2013 WL 1008593, at *8 (Del. Ch. Mar. 15, 2013) (discussing the discretionary nature of entering a status quo order).

[25] *Quantlab Group GP, LLC v. Eames*, 2018 WL 5778445, at *1 (Del. Ch. Nov. 2, 2018); *see also Neurvana Medical, LLC v. Balt USA, LLC*, 2019 WL5092894, at *2 (Del. Ch. Oct. 10, 2019) (denying a motion for reargument that was "effectively a collateral attack" on the court's exercise of its discretion, which is an "inappropriate basis" for relief).

[26] Def.'s Mot. for Rearg. ¶¶ 1, 7-9; *see also supra* note 14.

[27] *See supra* note 22 and accompanying text.

clearly emergent context in which the applicant has had little opportunity to develop evidence in support of its position," the "colorable claim" standard is sufficient because there is "an extremely unreliable record from which to assess the merits."[28] The record presented here was sparse and the motion was heard expeditiously.

Finally, even if the reasonable probability standard applied, the outcome of Comcast's motion would be the same. CX360 points to no abuse of discretion in granting temporary injunctive relief for a two-month period. It restates arguments that were considered and rejected during oral argument on the status quo motion.[29]

## B.    The Irreparable Harm Analysis

CX360 raises two grounds for revisiting my conclusion that Comcast sufficiently alleged irreparable harm absent temporary injunctive relief. Both points are unavailing. The arguments amount to second guessing the exercise of judicial discretion, which was appropriately based on accepting Comcast's allegations as true.

First, CX360 maintains that the Novation Agreement it proposed eliminated any harm to Comcast. CX360 argues that it "remov[ed] any issue" over certain problematic intellectual property-related terms of the Novation Agreement when it

---

[28] *Insituform Techs., Inc. v. Insitu, Inc.*, 1999 WL 240347, at *4 (Del. Ch. Apr. 19, 1999).

[29] *Compare* Def.'s Mot. for Rearg. ¶¶ 20-26, *with* Def.'s Opp'n to Mot. to Expedite and for Entry of a Status Quo Order (Dkt. 8) ¶ 31, *and* Sept. Hr'g Tr. 27.

committed not to impose them.[30]  But, as CX360 concedes, it made this same offer during oral argument on the motion for status quo order.  I found it unpersuasive.  Despite CX360's offer, Comcast credibly claimed that the Novation Agreement would subject it to onerous requirements that money damages cannot fully rectify.

Second, CX360 asserts that "Comcast itself regularly terminates customers for payment and other failures without consideration of whether the customers have an urgent need for emergency services."[31]  This argument was never briefed or argued; it is waived.[32]  It is also irrelevant.  In granting the status quo order, I considered whether CX360's termination of the MSA would cause irreparable harm to Comcast—not whether Comcast's own practices would cause harm to its customers.

## III.  CONCLUSION

CX360's arguments for reconsideration are either procedurally defective or substantively unconvincing.  Most of CX360's arguments were waived.  None demonstrate that the court misapprehended the law or facts in granting the status quo order through the end of the year.

---

[30] Def.'s Mot. for Rearg. ¶ 28 (citing Sept. Hr'g Tr. 20-21).

[31] *Id.* ¶ 29.

[32] *See supra* note 22 and accompanying text.

CX360's motion is therefore denied.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor