**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

NEW CASTLE COUNTY
COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted: April 23, 2021
Date Decided:  May 25, 2021

Richard P. Rollo, Esquire
Travis S. Hunter, Esquire
Dorronda R. Bordley, Esquire
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801

J. David Washburn, Esquire
Charles L. Perry, Esquire
Michael J. Chiusano, Esquire
Katten Muchin Rosenman LLP
2121 North Pearl Street, Suite 1100
Dallas, Texas 75201

David A. Crichlow, Esquire
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022

Garvan McDaniel, Esquire
HOGAN MCDANIEL
1311 Delaware Avenue
Wilmington, Delaware 19806

David S. Rosner, Esquire
Paul J. Burgo, Esquire
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019

Re: _CRE Niagara Holdings, LLC, et al v. Resorts Group, Inc._
C.A. No. N20C-05-157 PRW CCLD

Dear Counsel:

Last month, the Court issued its Memorandum Opinion (the "Opinion")

resolving Resorts Group, Inc.'s ("RGI") Motion to Dismiss.[1]  This Letter Order now addresses RGI's ensuing Motion for Reargument of that decision[2] and its separate Motion for Stay or Enlargement of Time.[3]  For the reasons that follow, both motions are **DENIED.**

## I.  THE UNDERLYING DISPUTE[4]

This dispute arises from RGI's 2017 sale of a resort and timeshare business to Cerberus Capital Management, LP—the non-party equity fund that owns the plaintiff entities.  CRE Niagara Holdings, LLC, and its co-plaintiffs (collectively "CRE") bring this action charging RGI with fraud and breach of contract for alleged false representations made in an effort to induce CRE to execute the contested agreements.

In May 2017, RGI and CRE entered into a Unit Asset Purchase Agreement ("UAPA"), through which CRE Niagara Holdings, LLC, acquired certain timeshare

---

[1]  *CRE Niagara Holdings, LLC v. Resorts Grp., Inc.*, 2021 WL 1292792 (Del. Super. Ct. Apr. 7, 2021).

[2]  Def.'s Mot. for Reargument, Apr. 16, 2021 (D.I. 76).

[3]  Def.'s Mot. for Stay or Enlargement of Time,  Apr. 19, 2021 (D.I. 77).

[4]   For a fuller recitation of the facts underlying the dispute in this litigation, refer to Section I of the Opinion: *CRE Niagara*, 2021 WL 1292792, at *1-3.

resort assets and ownership of certain entities, including CRE Bushkill, LLC.[5] CRE Niagara purchased the timeshare business and existing contracts with the timeshare members and RGI retained the majority right to the payment stream on those existing contracts.[6] This transaction was effectuated via multiple written agreements. The agreements relevant here are:[7] (1) the UAPA, through which CRE purchased the assets of the timeshare resorts and acquired ownership of certain entities including the CRE Bushkill Group, LLC;[8] (2) the Servicing Agreement that addressed the servicing of receivables from sales by RGI;[9] and (3) the Participation Agreement that provided CRE an interest in the receivables collected by RGI from the Servicing Agreement.[10] The Servicing Agreement and Participation Agreement are hereafter referred to as the "Ancillary Agreements."[11]

---

[5]  First Am. Compl. ¶ 2, Sept. 15, 2020 (D.I. 40).

[6]  *Id*. ¶¶ 23-25.

[7]  The Court fully recognizes that there are other operative agreements between the parties, namely the First Supplemental and Second Supplemental Agreements. But the Court did not include these other agreements in the Opinion's factual recitation because they bear little weight on the specific claims now before the Court.

[8]  First Am. Compl. ¶ 16.

[9]  *Id*. ¶ 25.

[10]  *Id*. ¶ 23.

[11]  *Id*. ¶ 17.

At the crux of the dispute now before this Court are the representations and warranties made in section 4.11 of the UAPA, entitled "Absence of Certain Changes."[12] According to CRE, prior to closing, RGI began selling timeshare interests to purchasers who were markedly less creditworthy than the pool of past buyers.[13] Further, CRE learned that RGI had, pre-closing, "dramatically relaxed its underwriting standards and intentionally entered into Timeshare Contracts with obligors with extremely low or non-existent FICO Credit scores . . ."[14] These practices, according to CRE, were directly contrary to the representations and warranties made by RGI in the UAPA.[15]

CRE filed this action on May 18, 2020, setting forth claims of fraudulent inducement and breach of contract, as well as, a request for declaratory judgment.[16] That same day, RGI filed its complaint in the United States District Court for the Southern District of New York asserting claims for breach of contract,

---

[12] *See* First Am. Compl., Ex. A § 4.11 (UAPA).

[13] First Am. Compl. ¶ 28.

[14] *Id.* ¶ 30.

[15] *Id.* ¶ 28.

[16] Compl., May 18, 2020 (D.I. 1).

indemnification, fraudulent inducement, and tortious interference relating to the Ancillary Agreements.[17] The next day, RGI filed a separate action in the United States District Court for the District of Delaware.[18] In August 2020, both federal actions were dismissed for lack of diversity jurisdiction.[19] As a result, RGI refiled its claims in New York state court on August 12, 2020 (the "New York Action").[20]

RGI then sought to dismiss this action on the grounds that the claims were time-barred by contractual provisions and, alternatively, failed to allege fraud with Superior Court Civil Rule 9(b) particularity.[21] RGI also moved for dismissal under Superior Court Civil Rule 12(b)(3), insisting this Court was not the correct forum for this suit.[22] And lastly, RGI contended that the action should be dismissed *or stayed* under the doctrine of *forum non conveniens*.[23] After considering the record

---

[17] Def.'s Mot. to Dismiss at 10, Oct. 15, 2020 (D.I. 47).

[18] *Id.*; First Am. Compl. ¶ 10.

[19] Pls.' Opp'n Br. at 5, Nov. 5, 2020 (D.I. 56).

[20] Def.'s Mot. to Dismiss at 10-11.

[21] Def.'s Mot. to Dismiss at 12-15, 19-28.

[22] *Id.* at 28-29.

[23] *Id.* at 31-33.

and the parties' arguments, the Court denied RGI's motion, concluding that CRE filed its action in the proper venue, and properly pled its fraudulent inducement claim and the notice requirements so as to survive RGI's motion to dismiss and its time-bar argument.[24]  Additionally, the Court declined to address the overripeness argument RGI raised for the first time (for this specific motion to dismiss) at oral argument.[25]  Further, the Court found that both parties waived their rights to claim Delaware an inconvenient forum in the operative agreements.[26]  Now before the Court is RGI's Motion for Reargument filed under Superior Court Civil Rule 59, as well as, what RGI generously terms a separate Motion for Stay or Enlargement of Time.

## II.   THE PARTIES' CONTENTIONS NOW

### A.  RGI'S MOTION FOR REARGUMENT

RGI posits three reasons for reargument.  First, RGI contends that when the Court found that the UAPA's Delaware forum selection clause applies to this action

---

[24]  *CRE Niagara*, 2021 WL 1292792, at *5-7, *8-11.

[25]  *Id*. at *4 n. 52. RGI raised this argument in its first motion to dismiss, filed in May 2020, and CRE thereafter amended its complaint. RGI then buried the argument when briefing its second dismissal motion, only to strategically resurrect it at argument with the rather unreasonable expectation that the Court would then entertain it.

[26]  *Id*. at *7-8.

–because the UAPA was the later-executed document—the Court overlooked the two Supplemental Agreements the parties entered into a year and a half after they entered into the UAPA and Ancillary Agreements.[27] The Supplemental Agreements are relevant here, in RGI's view, as those documents relate to CRE's fraudulent inducement claim (Count II) and its declaratory judgment claim (Count III).[28] So, RGI says, either Supplemental Agreement may pertain to CRE's fraudulent inducement claim "inasmuch as it relates to the UAPA and 'related documents.'"[29] With regard to CRE's declaratory judgment claim, RGI insists that the Supplemental Agreements are critical to *its* claims (pending in the New York Action) and, in turn, for resolving CRE's requested declaration that it has not breached the agreements between the parties.[30] RGI contends that the First Supplemental Agreement mandates New York as the exclusive jurisdiction for disputes arising out of that agreement and because it incorporates the Ancillary Agreements (collectively the "Performance Agreements"), it can only mean that the parties intended to include

---

[27] Def.'s Mot. for Reargument at 1-3.

[28] *Id*. at 2.

[29] *Id.*

[30] *Id.*

disputes regarding these agreements within the Supplemental Agreement's forum selection clause.[31]  Thus, as the "jurisdiction is exclusive in New York for [CRE]'s Performance Agreements claims, or at the very least, their Supplemental Agreements claims, RGI seeks clarification as to whether the [Opinion] applies to them."[32]

CRE responds to this first argument by maintaining that the UAPA's forum selection clause controls here and that RGI is just rehashing its prior arguments.[33] CRE contends that RGI's Supplemental Agreements argument fails to recognize that CRE Niagara Holdings, LLC, is not a party to either of the Supplemental Agreements.[34]  CRE argues that RGI ignores the fact that the Court properly disposed of its arguments when it found that the UAPA's forum selection clause applies here since CRE's affirmative claims are based on an alleged breach of the UAPA.[35]  Moreover, says CRE, the forum selection clause in the First Supplemental

---

[31]  *Id*. at 2-3.

[32]  *Id*. at 3.

[33]  Pls.' Opp'n to Mot. for Reargument ¶ 4, Apr. 22, 2021 (D.I. 78).

[34]  *Id*. ¶ 6.

[35]  *Id*. ¶ 7.

Agreement is limited to claims arising out of that agreement alone, just like the forum selection clauses in the Ancillary Agreements. Similarly, CRE asserts that the Court's analysis that the UAPA encompasses a broader scope applies with regard to any analysis of the Supplemental Agreements as well.[36] CRE contends that RGI missed the fact that "Transactions" is specifically defined in the UAPA to mean the purchase and sale of specified assets "and the other transactions contemplated by this Agreement and the Ancillary Agreements."[37] Thus, as RGI predicted, CRE insists that the Supplemental Agreements are incorporated into the Ancillary Agreements and are subject to the UAPA's forum selection clause.[38]

RGI's second argument on reargument is that the UAPA's forum selection clause is far from "crystalline," so either Delaware or New York is a proper forum

---

[36] *Id.* ¶ 8; *see CRE Niagara*, 2021 WL 1292792, at *7 ("*Second*, the UAPA is the later-executed document, and its forum selection clause delimits a broader scope than the Participation and Servicing Agreements. Indeed, Section 9.6 of the UAPA provides that the claims "arising out of this Agreement, any Ancillary Agreement or the Transactions" belong in Delaware. In contrast, the Ancillary Agreements restrict New York jurisdiction to their terms alone. Even more, UAPA Section 9.6's plain language itself includes the Ancillary Agreements within its forum selection clause. And the UAPA plainly defines the Ancillary Agreements to include the Servicing and Participation Agreements. This can only mean the parties intended to include disputes regarding these two (or too) within the UAPA's forum selection clause." (citations omitted)).

[37] Pls.' Opp'n to Mot. for Reargument ¶ 9; First Am. Compl., Ex. A at 11 (UAPA).

[38] Pls.' Opp'n to Mot. for Reargument ¶ 9; Def.'s Mot. for Reargument at 3 n.3.

and the UAPA's waiver-of-venue objections shouldn't bar its *forum non conveniens* arguments.[39]  RGI contends that while it did not challenge that Delaware was a permitted forum for CRE's UAPA claims, the UAPA is "less than crystalline" in regard to the Performance Agreement claims and that no one agreement supersedes the other.[40]  Further, RGI claims that a motion challenging venue in light of a parallel action is not strictly a *forum non conveniens* motion subject to the UAPA's waiver provision.[41]  Rather, RGI says that the *forum non conveniens* factors are merely considered by the Court to determine whether to stay in the interests of comity and that *its* filing of UAPA claims in the New York Action further militates in its favor.[42]

In response, CRE insists that RGI simply is attempting to recycle old arguments made below.[43]

In its last argument on its motion, RGI seeks leave to reargue (or actually, to now brief) its overripeness contention suggesting now that overripeness is a

---

[39]  *Id*. at 3-4.

[40]  *Id*. at 4.

[41]  *Id*. at 5.

[42]  *Id*.

[43]  Pls.' Opp'n to Mot. for Reargument ¶ 11.

threshold jurisdictional issue the Court might have a "positive duty" to raise.[44]  RGI contends that because this action was filed for tactical advantage—in apparent anticipation of other pending proceedings—and CRE may assert its claims in the New York Action without prejudice, it is overripe to proceed here.[45]

In response, CRE points out that RGI raised this issue in a previous motion to dismiss and made a tactical decision to abandon this argument when it had the opportunity to raise it in its amended motion to dismiss the original complaint and its ultimately unsuccessful motion to dismiss.[46]  Moreover, CRE contends that overripeness is not a question of subject matter jurisdiction but rather a discretionary doctrine that permits the Court to evaluate whether it is desirable to decline exercising existing jurisdiction.[47]  CRE argues that, as the Court noted in the Opinion, an overripeness determination is made after the consideration of various factors, an examination that did not occur because RGI chose not to advance the overripeness argument in its briefing.[48]  Thus, CRE insists that RGI should not get a

---

[44]  Def.'s Mot. for Reargument at 5.

[45]  *Id*. at 6.

[46]  Pls.' Opp'n to Mot. for Reargument ¶ 13.

[47]  *Id*. ¶ 14.

[48]  *Id*.

do over of this tactical decision. [49]

### B. RGI'S MOTION FOR STAY OR ENLARGEMENT OF TIME

In addition to reargument, RGI also seeks to stay this action or for an enlargement of time to answer CRE's amended complaint until the New York court rules on a pending motion to dismiss in the New York Action—that is, a stay with a enlargement-of-time label.[50] RGI reports that in February 2021, it amended its complaint in the New York Action out of necessity to assert additional claims, and to include UAPA claims in order to avail itself of New York's saving statute.[51] CRE has moved to dismiss the amended complaint and the issue has been fully briefed and is awaiting the New York court's decision.[52]

RGI claims that a stay or an enlargement of time to file its answer will assist in providing clarity as to which of its counterclaims are compulsory, as the New York court is currently undergoing a first-to-file analysis.[53] RGI insists that its

---

[49] *Id*.

[50] Def.'s Mot. for Stay or Enlargement of Time at 1.

[51] *Id*. at 2.

[52] *Id*. at 2-3.

[53] *Id*. at 3.

claims should be deemed simultaneously commenced with CRE's claims because: (i) the two parties claims were filed close in time together; (ii) CRE's action was "anticipatory and defensive"; and, (iii) the convenience factors and interests of the state strongly favor the New York Action.[54] RGI contends that until the New York court rules on the first-filed issue, it lacks guidance and is presented with a "Hobson's choice" of risking the waiver of over $35 million in claims or abdicating its choice of forum before any court decides whether it is required to do so.[55]

Additionally, RGI says that either this Court's ruling on this reargument motion or the New York court's ruling on CRE's motion to dismiss will determine whether New York has exclusive jurisdiction over its claims or whether it would need to assert its claims in this Court as counterclaims.[56] And, according to RGI, the resolution of the pending motions to dismiss in the New York Action will provide guidance as to the interpretation of relevant contracts and inform it of whether it has adequately pled its torts claims and that the Cerberus defendants are alter egos.[57]

---

[54] *Id.* at 4.

[55] *Id*. at 4-5.

[56] *Id*. at 5.

[57] *Id.*

RGI suggests that this stay, or "enlargement of time" won't prejudice CRE and will only streamline issues concerning the validity and necessity of its potential counterclaims.[58]

In response, CRE insists that this motion is just an additional (and untimely) motion for reargument as the Court has already denied RGI's previous motion to dismiss or stay in favor of the New York Action.[59] CRE argues that RGI has failed to demonstrate that litigating in Delaware would cause overwhelming hardship;[60] which, CRE says, RGI must do because this action is the first-filed and longest standing action, the parties agreed to litigate in Delaware, and the Ancillary Agreements New York forum provisions do not address all the claims raised in this case.[61]

Finally, CRE contends that RGI's argument that it will be precluded from pursuing relief in Delaware absent a stay is meritless and a direct result of its own

---

[58] *Id.*

[59] Pls.' Opp'n to Mot. for Stay or Enlargement of Time ¶ 7, Apr. 23, 2021 (D.I. 79).

[60] CRE invokes the factors applied in *LG Elecs. Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246, 1252 (Del. 2015).

[61] Pls.' Opp'n to Mot. for Stay or Enlargement of Time ¶¶ 9-10.

actions.[62] Specifically, says CRE, RGI's contention that it would not be able to raise its veil-piercing claims in Delaware is of no moment because judges of this Court have presided over equitable claims in Chancery via temporary appointment.[63] Further, CRE argues that RGI's "Hobson's choice" argument lacks merit as well because RGI could file its claims right now in this Court. Or alternatively, should the New York court dismiss RGI's claims there, CRE suggests that RGI might then add those claims here.[64]

## III. DISCUSSION

A motion for reargument permits a trial court an opportunity to reconsider its findings of fact, conclusions of law, or judgment.[65] Still "Delaware law places a heavy burden on a [party] seeking relief pursuant to Rule 59."[66] The moving party has the burden to demonstrate that the Court must correct an error of law or prevent

---

[62] *Id.* ¶ 12.

[63] *Id.*

[64] *Id.*

[65] *See Ramon v. Ramon*, 963 A.2d 128, 136 (Del. 2008) ("A motion for reargument is the proper device for seeking reconsideration by the Trial Court of its findings of fact, conclusion of law, or judgment." (internal quotation marks and citations omitted)).

[66] *Kostyshyn v. Comm'rs of Town of Bellefonte*, 2007 WL 1241875, at *1 (Del. Super. Ct. Apr. 27, 2007) (citations omitted).

manifest injustice occasioned by its judgment.[67]  But "[a] Rule 59(e) application is not an avenue for the moving party to raise new arguments or to rehash arguments already decided by the Court."[68]  And such motion will be denied unless the Court has "overlooked a controlling precedent or legal principles," or "has misapprehended the law or facts such as would affect the outcome of the decision" challenged.[69]  Upon a Rule 59(e) reargument motion, the Court "will determine from the motion and answer whether reargument will be granted."[70]

## A. RGI'S MOTION FOR REARGUMENT

### 1. The UAPA Controls.

A Rule 59 reargument motion isn't an appropriate vehicle for rehashing arguments the Court already considered and rejected when deciding the preceding substantive motion.  Nor is such a motion a stall device to avoid the consequences of an adverse ruling or, even worse, to obtain the relief—here time—sought, but

---

[67]  *See Hessler, Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969) ("The manifest purpose of all Rule 59 motions is to afford the Trial Court an opportunity to correct errors. . . .").

[68]  *Maravilla-Diego v. MBM Constr. II, LLC*, 2015 WL 5055955, at *1 (Del. Super. Ct. Aug. 27, 2015) (citations omitted); *see id.* at *1 n.4 (collecting authority).

[69]  *Cummings v. Jimmy's Grille, Inc.*, 2000 WL 1211167, at *2 (Del. Super. Ct. Aug. 9, 2000) (citation omitted).

[70]  Del. Super. Ct. Civ. R. 59(e).

denied, in the first round. No, the proper purpose of a Rule 59 motion is to allow the Court to correct overlooked controlling precedent, legal principles, or facts. Not one of those was missed here.

RGI argues that the Court's Opinion overlooked the existence of the Supplemental Agreements entered into by the parties long after the execution of the UAPA and Ancillary Agreements.[71] RGI contends that CRE is partially to blame for this as its Amended Complaint does not mention the Supplemental Agreements aside from its prayer for relief where it requests the Court to declare that it is not in default of breach of the UAPA, Ancillary Agreements, or any supplement thereto.[72]

The Court was well aware of the Supplemental Agreements' existence. They were discussed throughout RGI's dismissal briefings and oral argument.[73] The First Supplemental Agreement was attached as an exhibit to CRE's Amended Complaint.[74] And despite RGI's view, the Court didn't overlook—or, in reading between the lines of RGI's motion—ignore the Supplemental Agreements. When

---

[71] Def.'s Mot. for Reargument at 1.

[72] First Am. Compl. at 26.

[73] Arg. Tr. at 23-25, 29-30, 54, Jan. 7, 2021 (D.I. 67).

[74] First Am. Compl., Ex. J (Supplemental Agreement).

deciding which forum selection clause governs the claims in *this* action, the Court examined each contract attached to CRE's Amended Complaint, the language of their forum selection clauses, and all other relevant portions of each contract. And as RGI conceded at argument, the contract at issue in the affirmative claims of this case is the UAPA[75]—not the Participation Agreement, Servicing Agreement, or either of the Supplemental Agreements.[76] Not only did RGI tell the Court at argument that the UAPA *is the* contract at issue in *this* case, but RGI also clearly represented then that the Ancillary Agreements and Supplemental Agreements *are not* the contracts at issue *here*.[77]

Nonetheless, the Court examined the language of each contract's forum

---

[75] Dec. 10, 2020 Hearing Presentation, at slide 30 (D.I. 65) (emphasis added).

| | Delaware | New York | |
|---|---|---|---|
| Pending Claims | Plaintiff's defensive damages claims arising out of the UAPA, and overripe declaratory judgment claim. | RGI's claims for tortious interference, fraudulent inducement, alter ego, breach of contract. | |
| Filing Date of Claims | May 18, 2020 -- anticipatorily | May 18, 2020 (S.D.N.Y.) | |
| Contracts at issue in affirmative claims | UAPA (Del) | Servicing Agreement (NY) Participation Agreement (NY) Supplemental Agreement (NY) | Second Supplemental Agreement PSQ Agreement |

[76] *Id.*

[77] *Id.*

selection clause. And the Court found that in addition to the UAPA being the contract at issue here, the UAPA's forum selection clause also contains broader, more encompassing language. Under UAPA Section 9.6 claims "arising out of this agreement, any Ancillary Agreements or the Transactions" belong in Delaware;[78] the language of the forum selection clauses in the Ancillary Agreements restrict New York jurisdiction to their terms alone.[79] And the forum selection clause of the First Supplemental Agreement contains the same limiting language as the Ancillary Agreements: "Each Party hereto hereby irrevocably and unconditionally submits, itself and its property, to the exclusive jurisdiction of the Supreme Court of New York sitting in New York County and of the United States District Court for the Southern District of New York, . . . in any action or proceeding arising out of or relating to *this* Supplemental Agreement . . ."[80] So no matter which other agreement is compared thereto, the UAPA contains the broader, more encompassing forum selection clause.

---

[78]  First Am. Compl., Ex. A § 9.6 (UAPA); *CRE Niagara*, 2021 WL 1292792, at *7.

[79]  *Id.*; First Am. Compl., Ex. B § 8.6 (Participation Agreement); Ex. C § 6.6 (Servicing Agreement).

[80]  First Am. Compl., Ex. J § 10 (Supplemental Agreement).

As CRE's claims in this action directly pertain to the to the representations and warranties made in the UAPA and the UAPA is the contract at issue here, reargument on this point is not warranted.

## 2. The Parties Waived *Forum Non Conveniens.*

In contending that the Court may consider *forum non conveniens* factors here, RGI rehashes its "less than crystalline" argument raised in briefing and at oral argument.[81] But the Court still detects no ambiguity in the UAPA's controlling forum selection clause or its plain waiver of *forum non conveniens* challenges.[82] And where the UAPA's forum selection clause applies, the entirety of the clause applies—including the clause's waiver of inconvenient forum challenges.[83]

## 3. RGI Can't Revive the Overripeness Argument it Waived.

In contesting the Court's decision to eschew its overripeness claim, RGI seems to forget the rules for litigating a claim in this Court (or any court). It usually

---

[81]  Def.'s Mot. to Dismiss Reply at 19-20, Nov. 19, 2020 (D.I. 58); Arg. Tr. at 32-33.

[82]  *CRE Niagara*, 2021 WL 1292792, at *7-8.

[83]  RGI insists that its February 2021 filing of UAPA claims in the New York Action further supports its contention that New York is in more convenient forum. *See* Def.'s Mot. for Reargument at 4-5 & n.6. But RGI's unilateral decision to file its UAPA claims elsewhere in explicit derogation of the UAPA's forum selection clause neither adds weight to its argument nor alters any *forum non conveniens* analysis the Court might engage in this instance.

goes like this: a party authors a pleading complete with all its arguments; the parties fully brief the issues raised in that pleading; they then present oral argument *on those briefed* issues; and then, the Court either rules from the bench or takes the matter under advisement to issue a written decision.

Here, during the December 2020 oral argument, RGI raised an issue it once abandoned. RGI says it raised the "overripeness" issue in its July 8, 2020 motion to dismiss.[84] But that motion was directed at a complaint that was later amended. And after amendment, RGI filed two more motions to dismiss that excluded (intentionally, one must assume) the very overripeness argument it seeks to press now.[85] RGI cannot now revive an argument it strategically chose not to champion when twice before given the opportunity.[86]

---

[84] Def.'s Mot. for Reargument at 5 n.9.

[85] Pls.' Opp'n to Mot. for Reargument ¶ 13.

[86] *Saunders v. Preholdings Hampstead, LLC*, 2012 WL 1995838, at *3 (Del. Super. Ct. May 23, 2012) ("[I]ssues not addressed in briefing, and raised for the first time during oral argument, are deemed waived." (citing *King Constr., Inc. v. Plaza Four Realty, Inc.*, 976 A.2d 145, 155 (Del. 2009))). And RGI's call for the Court to honor a "positive duty" to engage and adopt its peculiar view on jurisdiction despite its own failure will go unanswered.

## B.  RGI's Motion to Stay is Just a Mislabeled Motion for Reargument.

In its unsuccessful motion to dismiss, RGI asked that, in lieu of dismissal, the Court stay this action until the resolution of the New York Action on the basis of *forum non conveniens*.[87]  In analyzing the *forum non conveniens* factors from *Schmidt v. Washington Newspaper Publishing Company, LLC*,[88] RGI argued that "most importantly, where, as here, there are similar actions pending in other jurisdictions, including actions whose outcome might affect the outcome in this case, the sixth [*Schmidt*] factor mandates a dismissal or stay."[89]  The Court denied the stay request.

Now, RGI is back again seeking a stay (or an enlargement of its time to answer—which are just more words describing a stay), until the New York court resolves CRE's motion to dismiss in the New York Action.[90]  While adding some new facts and arguments to its motion, RGI again essentially argues that a stay or

---

[87]  Def.'s Mot. to Dismiss at 29.

[88]  2019 WL 4785560, at *6 (Del. Super. Ct. Sept. 30, 2019).

[89]  Def.'s Mot. to Dismiss at 33 (internal quotation marks omitted) (quoting *Hurst v. Gen. Dynamics Corp.*, 583 A.2d 1334, 1339-40 (Del. Ch. 1990)).

[90]  Def.'s Mot. for Stay or Enlargement of Time at 3.

enlargement of time might assist in determining the outcome of this case. RGI says the delay is appropriate because it will: (1) help RGI determine which claims it will need to eventually bring in this Court; (2) settle which court has exclusive jurisdiction over these claims; and, (3) resolve which action is deemed to be "first-filed."[91] And once again, RGI argues that the convenience factors and interests of the two states strongly favor the New York Action.[92] No matter RGI's label on this separate filing, the Court will treat it as precisely what it is: a motion for reargument of its earlier stay request.

The only issue on a motion for reargument under Rule 59(e) "is whether the Court overlooked something that would have changed its earlier decision."[93] A motion for reargument is not an instrument through which the disappointed party raises new arguments.[94] Nor is it a tool for rehashing previously-made arguments.[95]

---

[91] *Id.* at 3-4, 5.

[92] *Id.* at 4 (citing to its pleadings from the underlying motion to dismiss).

[93] *Long v. Johnson & Johnson Servs., Inc.*, 2020 WL 2850205, at *1 (Del. Super. Ct. June 2, 2020) (jnternal quotation marks omitted) (quoting *Ferko v. McLaughlin*, 1999 WL 167827, at *1 (Del. Super. Ct. Feb. 19, 1999)).

[94] *Maravilla-Diego*, 2015 WL 5055955, at *1.

[95] *Id.*

And beyond doubt, a prayer for reargument should never be used as a device to extract the relief—here, delay—a party failed to wrest through its substantive predecessor.

Here, RGI repeats its earlier arguments as to why the New York Action is the more-favored action and once again characterizes CRE's claims here as merely anticipatory and defensive.[96] But RGI adds now a "comity" and "interests of justice" gloss to suggest a couple more reasons it should get its stay.[97]

The Court's already denied RGI's motion to stay. And no deep exploration of RGI's reconstituted arguments is required.

The UAPA's forum selection clause still applies to this action.[98] And under the plain language of the UAPA's forum selection clause, the parties waived their rights to contest their chosen forum.[99] Having engaged in this second look, there was no misapprehension of law or fact, nor any failure to recognize controlling precedent or legal principles that misled the Court to so decide.

---

[96] Def.'s Mot. for Stay or Enlargement of Time at 4.

[97] *Id*. at 2.

[98] *CRE Niagara*, 2021 WL 1292792, at *6-7.

[99] *Id*. at *7-8.

RGI's decision to take its UAPA claims to New York with the risk of those claims being eventually dismissed on improper venue grounds is RGI's own tactical choice.  Too, whatever counterclaims RGI decides to bring in to or exclude from its answer in this action, again, is RGI's own tactical choice.  The Court will not rescue a party from its own strategy calls, nor will it give that party any advice on how to avoid its own litigation peril.

## IV. CONCLUSION

Given that RGI failed to shoulder Rule 59's heavy burden, and that the Court did not misinterpret or overlook any facts or law when deciding RGI's dismissal motion, RGI's Motion for Reargument thereof is **DENIED.**  Further, given that RGI's Motion for Stay or Enlargement of Time is just another motion for reargument and RGI has failed to meet that same Rule 59 burden, the Motion for Stay is **DENIED.**  RGI shall, in accordance with Superior Court Civil Rule 12(a)(1), file its answer to CRE's amended complaint within ten (10) days of this Order.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

cc: All Counsel via File and Serve